## Ginter Appeal

*Donald F. U. Goebert*, for appellant.

*D. T. Marrone*, for appellee.

KURTZ, J., March 17, 1967.—The informality with which this zoning case had its beginning is not consistent with the attention which ought to be given to the substantial questions concerning the valuable property rights which zoning administrative officers and zoning boards of adjustment are called upon to resolve. It would appear that Lawrence U. Ginter, who was an officer and principal owner of a corporation which bears his name, made a verbal request of the zoning officer of West Goshen Township on April 4, 1966, for a permit to build a house for which plans were submitted upon a lot of land which his company owned, situated on the east side of Dogwood Lane in that township. The corporation had acquired title to that lot in July of 1965, and, at the same time, by a separate deed had acquired title to a contiguous lot upon which a house had already been built to the south of the one here in question, title to both lots having been acquired from the same grantors. Title to that house and lot was conveyed to another by Ginter's corporation on April 18, 1966, about two weeks after the instant application was first made.

This parcel, as well as the one upon which the house was erected, is located in an R-3 residence district so designated by the West Goshen Township Zoning Ordinance of 1965, as amended. In this connection, it

should be noted that the township adopted that ordinance in August of 1965.

In an R-3 residence district, a lot which is to be serviced by on-site water supply and sewage disposal systems is required to have a content of at least 30,000 square feet if it is to be improved. The lot in question has a content of about 20,000 square feet. The one next to it, upon which the house was built and which appellant has already sold, had a content of 31,000 square feet. Thus, it is obvious that at no time did appellant's corporation own sufficient ground out of which two lots which would conform to the area requirements of the ordinance could be made.

The zoning officer refused the application. Appellant's appeal to the zoning board of adjustment was equally informal. He merely paid a fee and a hearing was scheduled. At the hearing, he was the only witness who was sworn. Those who appeared to protest the granting of the application were not required to give testimony under oath. The board of adjustment refused to issue the permit. It held that a variance should not be allowed because any hardship which appellant might suffer was self-imposed. It also held that a special exception should not issue because appellant had not shown that this plot of ground had been held in "single and separate ownership" when the ordinance became effective. Since no testimony was heard in this court, we must review the decision of the board of adjustment to determine whether it has been guilty of an error of law or an abuse of discretion: Upper Providence Township Appeal, 414 Pa. 46 (1964).

We will first consider the board's refusal to grant a special exception. In that regard, we point out again that the burden is on applicant to show that the use he intends to make of the land is allowable under the terms of the ordinance which permits special ex-

ceptions: Temple University v. Zoning Board of Adjustment 414 Pa. 191, 195 (1964).

In determining whether or not appellant has carried that burden, certain provisions of the ordinance itself must be considered. Section 602.1 thereof contains the following provision: "A building may be erected . . . on any lot held at the effective date of this Ordinance in single and separate ownership which is not of the required minimum area, . . . , provided a special exception is authorized by the Board of Adjustment, and provided further that the applicant does not own or control other adjoining property sufficient to enable him to comply with the provisions of this Ordinance as amended".

Section 102 thereof, which defines the various terms employed within the ordinance, provides, inter alia:

"*Lot*. A lot is a tract or parcel of land held in single and separate ownership.

"*Single and Separate Ownership*. The ownership of a lot by one or more persons, . . . , which ownership is separate and distinct from that of any abutting or adjoining lot".

Therefore, under the terms of the ordinance, this applicant should have been granted a special exception if at the time the ordinance became effective, i.e., in August of 1965, he owned this parcel "in single and separate ownership" and if he did not then own or control sufficient other adjoining property to enable him to comply with the minimum area requirement of 30,000 square feet. We must examine the testimony to determine whether he has shown himself to have qualified in that regard.

At the time the ordinance became effective, appellant's corporation had been in title to the parcel in question for about one month. It had been the owner of the contiguous tract to the south for the same period of time. Although there is evidence that appel-

lant repaired and renovated the house on the larger parcel preparatory to its resale, there is no firm indication in it that such work was undertaken during the period we are now considering. There is also evidence to the effect that the instant tract was growing up in small trees and high grass at the time its title was conveyed to Ginter's corporation and that appellant permitted that condition to exist until he commenced to clear the lot to construct the house for which he seeks this permit in the spring of 1966. We have already observed that title to the respective parcels was acquired by separate deeds; hence, each was separately described, but the deeds bore the same date and were from the same grantors. In addition, it should be noted that at some time after the acquisition of title—whether it was before or after the effective date of the ordinance does not appear—applicant conducted test borings upon the parcel with which we are now concerned to determine whether or not the composition of its soil was suitable for the construction of a dwelling house.

If the intention of the owner as to the manner in which he will exercise ownership of a tract of land is the key by which single and separate ownership is to be determined, then there can be little doubt in this case but that the owner of these parcels intended such a result from the time his corporation took title to them. This owner, being one engaged in the building business, intended to buy the one tract, renovate the house upon it, and then resell that parcel as a separate tract or unit when that could be accomplished profitably. Similarly, he intended to build a house upon the lot we are now discussing and, hopefully, to sell it at a profit to one who had no association or connection with the owner of the one first sold.

Making the intention of the landowner an influential factor in matters having to do with the uses to which

land may be put under the provisions of a zoning ordinance is not new or unique in our law. In Haller Baking Company's Appeal, 295 Pa. 257, 262 (1928), it was said: "The use for which the property is adapted need not be in actual operation at the time of the adoption of the ordinance, if the attending circumstances connected with the property bear out the conclusion that the owner *intended* to use the property for that purpose". (Italics supplied.) More recently, the same language was repeated in Eitnier v. Kreitz Corporation, 404 Pa. 406, 411 (1961), a case in which it was determined that the landowner had established a nonconforming use of his land as a truck terminal because he had manifested an intention so to use it prior to the time the zoning ordinance was adopted.

Our search for appellate authority defining "single and separate ownership" has failed to produce any precedent which can be used to advantage. The definition of that term contained in the ordinance itself amounts to little more than a restatement of the term defined.

In Cutler v. Cheltenham Township, 82 Montg. 89, 92 (1963), which was followed in Yusem v. Lower Merion Township, 84 Montg. 104 (1964), in which a construction of that term was required, it was said: "It should be noted that these two parcels have been under common ownership since 1937, prior not only to the effective date of the 1956 ordinance but also prior to the zoning ordinance of 1941 which contained the same provisions as the present zoning ordinance. It is clear, therefore, that these two lots were not 'held *in single or separate ownership at the effective date of this Ordinance*' ". (Italics the court's.) In these cases, common ownership of contiguous parcels prompted the court to conclude that that ownership was not single and separate. In Wade v. Ridley Township Board of Adjustment, 51 Del. Co. 222 (1963),

contiguous lots owned by different owners on the effective date of the ordinance were held not to have retained their character of being singly and separately owned after the owner of one acquired title to both. Here again, the fact of common ownership appears to have been the factor which the court regarded as controlling. In Markey v. Zoning Board of Adjustment, 409 Pa. 430 (1963), it was held that the owner of two contiguous lots could use them as one in order to meet the requirements of the zoning ordinance having to do with open space surrounding a building. In Zoning Appeal of Killhour, 10 Chester 153 (1961), and in Burnside v. Willistown Township, 12 Chester 282 (1964), it was held that the owners of contiguous lots which had been used as a single unit could not thereafter obtain a variance to use each lot separately where their areas after such division did not meet the requirements of the zoning ordinance.

We believe that the considerations which appear to have motivated the courts in the Cutler and Wade cases are artificial at best. For that reason, we believe that the bona fide intention of the owner of contiguous tracts as to whether he will use them as one or two tracts is a much more satisfactory criterion upon which to base a decision as to the existence of "single and separate ownership". Whether having been owned in that fashion at the time a zoning ordinance became effective will determine that status for all time, no matter what the then owner or subsequent owners do with the lots, is a question which we need not now decide. Accordingly, having concluded that this appellant did intend to use his lots as separate tracts when the ordinance became effective, we now hold that his corporation did then own them in "single and separate ownership".

It has been suggested that by using the land-owner's subjective intent as the criterion by which the single

and separate ownership is to be determined, we will be opening the floodgates to those property owners who hold development land and who will have laid that land out in lots which do not conform to the area requirements of an ordinance upon the date it becomes effective. The argument is made that any land developer who has made such a plan may proclaim his intention to so use his lots and thereby circumvent the requirements of the ordinance.

We do not believe that such will be the case. Not only must a landowner establish that the particular lot in question was owned in single and separate ownership, but he must go further and demonstrate that on the effective date of the ordinance, he did not own or control other adjoining property sufficient to enable him to comply. In our view, one who owns a large acreage which has been laid out in contiguous lots would not be able to establish the second requirement necessary to the obtaining of a special exception.

We must next inquire whether this applicant has shown that he did not own or control other adjoining property sufficient to enable him to comply with the requirements of the ordinance. In our view, that factor has been shown to exist. The total land area of both lots to which the applicant acquired title fell short of the required 60,000 square feet if they were to be used as two lots. Therefore, the owner was put to a decision as to whether he would use both lots as one; whether he would endeavor to make two lots out of the whole, neither of which would conform to the area requirements of the ordinance, i.e., two lots each containing about 25,000 square feet; or whether he would do that which he is now attempting. The first alternative is one which could have been accomplished without the making of an application to zoning authorities. The two last mentioned required zoning approval.

Applicant elected to pursue the latter course, as we have said. If he is permitted to erect the proposed house upon this lot, all requirements as to side yard area and setback will be observed. No health hazard will be created if the permission here sought is granted; no question of nuisance or annoyance to the neighborhood has been advanced. Since this applicant acquired two lots which between them were lacking by about 10,000 square feet of the area required for their separate use, and since the only way he could have used them without zoning approval would have been as one lot, we are of the opinion that he has shown that at no time did he own or control sufficient adjoining property to enable him to use the instant tract as a single lot which would meet the requirements of the ordinance. In our judgment, he has shown circumstances which entitle him to the issuance of a special exception. No proof has been offered which would indicate that the health, safety and morals of the locality will be adversely affected if the exception is granted. The board of adjustment should have granted such an exception.

We believe also that the issuance of a variance could have been justified on this record. A hardship has been imposed upon this plot of ground through the operation of the provisions of the ordinance. Unless a use of this tract which is not disadvantageous to health, morals and safety is permitted, it will remain unimproved and unused serving no purpose. Variances are designed to prevent the production of such a result. Cf. Poster Advertising Company, Inc. v. Zoning Board of Adjustment, 408 Pa. 248 (1962).

We have already pointed out that the plot was acquired as a separate lot. It has been nonconforming as to area for quite some time, having been made such by the terms of an amendment to the prior ordinance adopted in 1961. We have already discussed the possibilities as to use open to this applicant. In these cir-

cumstances, we think that he has not acted unreasonably in doing that which he did. However, we will not base our decision upon that ground.

Having reviewed the decision of the zoning board of adjustment as we are required to do, we are of the opinion that the board was guilty of an error of law by refusing to grant appellant a special exception to use the lot in question as he proposed to use it. The decision of that board is reversed.