532 A.2d 47

Parkside Associates, Inc., Appellant *v.* Zoning Hearing Board of Montgomery Township, et al., Appellees.

Argued June 11, 1987, before Judges MACPHAIL and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Emory W. Buck, Grim and Grim,* for appellant.

*Richard W. Berlinger, Berlinger & Small,* for appellee, Zoning Hearing Board of Montgomery Township.

*Gerald F. Glackin, Brunner, Conver, Glackin & Chase,* for appellees, Donald J. Walsh et ux.

OPINION BY JUDGE BARRY, October 8, 1987:

Parkside Associates, Inc., appeals an order of the Court of Common Pleas of Montgomery County which affirmed a decision of the Zoning Hearing Board of Montgomery Township refusing Parkside's request for either a certificate of nonconformity or a variance.

Parkside is the equitable owner of a parcel of land located in Montgomery Township. In 1941, a large tract of land, known as Lansdale Manor Heights, was subdivided. In December of 1947, Nelson and Marie Moyer bought two adjoining unimproved parcels, numbered lots 11 and 12. Less than one month later, they acquired the contiguous lot number 10, the subject of this litigation. The Moyers built a house which was essentially centered upon lots 11 and 12. In 1951, the

Moyers conveyed to Harry White by single deed and for a single consideration, lots 10, 11 and 12. Lots 11 and 12 were referred to as Parcel A while lot 10 was referred to as Parcel B. Both parcels were conveyed by single deed in 1955 and again in 1966, when David and Elsie Detwiler obtained the property. In 1976, the Detwilers sold Parcel A, retaining lot 10-Parcel B. In 1984, the Detwilers signed an agreement of sale for the property to Parkside, subject to Parkside obtaining approval for construction of a single family dwelling.

Montgomery Township passed a zoning ordinance in 1952 which zoned the property R-2 and required, *inter alia,* frontage of 100 feet and a minimum area of 20,000 square feet. Lot 10 has sixty feet of frontage and an area of 19,500 square feet. In order to provide for lots made undersized by the zoning ordinance, Article XII, Section 1201 of that ordinance provides:

> Lots: Non-Conforming lots as to Area and Width Regulations, and Lots of Unusual Dimensions. In any Residential District, a building may be erected or altered on any unimproved lot held in *single and separate ownership* on the effective date of this Ordinance which is not of the required minimum area or width. (Emphasis added.)

The ordinance also defines "single and separate ownership" in Article II, Section 200, as "[t]he ownership of property by any person, which ownership is separate and distinct from that of the adjoining property."

Parkside, after obtaining equitable title to the property, filed an application with the Board seeking either a certificate of non-conformancy or a variance. The Board denied both requests. Parkside appealed to the trial court which, without taking any additional testimony, affirmed. This appeal followed.

In zoning cases where the trial court takes no additional evidence, our scope of review is limited to determining whether the Board abused its discretion, committed an error of law or made necessary factual findings which are not supported by substantial evidence. *Zoning Hearing Board of Indiana Township v. Weitzel*, 77 Pa. Commonwealth Ct. 108, 465 A.2d 105 (1983). Appellant makes two arguments, neither of which has any merit. Hence, we will affirm.

Appellant first argues that lot 10 was held in single and separate ownership, apart from lots 11 and 12, at the time the zoning ordinance was enacted. This argument, however, is belied by the definition contained in Section 200 of the ordinance, which defines such ownership as "[t]he ownership of property by any person, which ownership is separate and distinct from that of adjoining property." The owners of the property at the time of enactment of the ordinance, the Whites, were grantees of both parcels under a single deed from Mr. White, who acquired the property individually. Furthermore, Mr. White acquired both parcels under a single deed and for a single consideration from the Moyers, who admittedly obtained the parcels in two separate transactions. As Parcel A and Parcel B are adjoining, we see nothing in this record which indicates that the Whites held the two parcels as separate and distinct entities.

Appellant points to the fact that the Moyers built their house centered on lots 11 and 12, and argues that this shows the Moyers' intent to keep the tracts separate. Even if this action did show such an intent, and we do not think it does, it is not the Moyers' intent that controls for we must look to the intent of the landowners at the time of enactment of the zoning ordinance in 1952. As already stated, there is nothing in this record to indicate that the Whites had any intention of

treating the two parcels as separate and distinct. Appellant points to other facts occurring after enactment of the ordinance which allegedly evidence an intent to keep the tracts separate, but again, it is the intent of the landowners at the time of the ordinance's enactment that controls.

The Board and the trial court relied upon *Alexander v. Abington Township,* 104 Montg. Co. L.R. 231 (1976), (C.P. Pa. 1976), where the court ruled that automatic merger occurs whenever adjoining properties come into common ownership. We cannot agree with such a rule, for it would prohibit a landowner from purchasing and building upon an adjoining lot under the terms of an ordinance such as the present one. We have already held in a similar situation that a board abuses its discretion when it denies a requested variance to an adjoining landowner. *Jacquelin v. Horsham Township,* 10 Pa. Commonwealth Ct. 473, 312 A.2d 124 (1973). Exceptions for lots predating a zoning ordinance are not personal, but must be deemed to run with the land. If it can be shown that a property owner who purchases adjoining tracts does not intend to keep the adjoining tracts separate and distinct, that intent should be honored when questions such as presented here arise. Unfortunately for appellant, no such proof of the Whites' intent was presented in this case so that at the time of the zoning ordinance, the parcels were no longer separate and distinct. For that reason, the certificate of nonconformancy was properly denied.

Appellant also argues that both the Board and the trial court committed an error of law in refusing to grant the variance. It is well settled, however, that a variance need not be granted where the hardship is self imposed. *Grace Building Co., Inc. v. Zoning Hearing Board of Upper Merion Township,* 38 Pa. Commonwealth Ct. 178, 392 A.2d 888 (1978). Both the Board

and the trial court believed that appellant's hardship in this case was self inflicted. Appellant relies upon two cases in attempting to convince us that this legal conclusion is incorrect.

He first relies upon *Jacquelin* and argues that if the variance is not granted, that case requires a conclusion that property has been taken without just compensation. *Jacquelin*, however, is inapposite because there, the owner of the developed adjoining lot purchased the non-conforming lot in a separate transaction after enactment of the zoning ordinance. As the two lots in question had been held in single and separate ownership since enactment of the zoning ordinance there, there is no question that any individual except an adjoining landowner could have purchased the undersized lot and built upon it. *Jacquelin* simply decided that the adjoining landowner in such a situation was also entitled to build upon it. Suffice it to say here that the lot was not held in single and separate ownership when this zoning ordinance was enacted.

Appellant also relies upon *Scott v. Fox*, 36 Pa. Commonwealth Ct. 88, 387 A.2d 965 (1978), where we affirmed the grant of a variance in circumstances which, though similar, contain one major difference rendering that case inapposite. A subdivision plan was approved in 1923. A zoning ordinance passed in 1925 made all of the subdivision lots undersized. When the zoning ordinance was enacted, the two contiguous lots in question were owned by Merion Title. Although the facts are somewhat sketchy, a house was built on one of the undersized lots. One Fox bought this property in 1963. In 1964, Fox bought the adjoining lot, which according to the trial court's opinion, had been deeded, assessed and maintained separately from the lot upon which Fox's house was located. Fox then applied for either a special exception or a variance in order to build a single family

residence on the undersized lot. Because title to both lots was in Merion Title at the time the zoning ordinance was passed, a special exception was denied but the variance was granted, based essentially upon the theory that the hardship was not self inflicted. The court relied upon the fact that the original lot was already developed when the second lot had been acquired and that the two lots had, for some time, been held by different owners.

Under the law as it now stands, it may well have been improper to build the first house on an undersized lot when the two adjoining tracts were held by the same owner at the time of enactment of the ordinance. In *Ephross v. Solebury Township Zoning Hearing Board,* 25 Pa. Commonwealth Ct. 140, 359 A.2d 182 (1976), we held that a developer failed to meet his burden of proving entitlement to a variance to build on two contiguous undersized lots because combining the lots would meet the dimensional requirements of the zoning ordinance. In *Scott,* there is no mention concerning how the house was built on the undersized lot after passage of the zoning ordinance. Nonetheless, once it was built and since the contiguous lot was thereafter held in separate ownership, the *purchase* of the undersized lot by an adjoining landowner was not a self-inflicted hardship. In the present case, the *subdivision* of a single piece of property into two lots, one of which is undersized, is a self inflicted hardship relating to that undersized lot. *See Volpe Appeal,* 384 Pa. 374, 121 A.2d 97 (1956).

Appellant finally argues that even if the traditional criteria for a variance are not met, it is entitled to relief as the variance requested is de minimis in nature. While the area variance may well be de minimis (the lot having 19,500 square feet when 20,000 are required under the ordinance), the frontage variance is not, this lot

having only sixty feet of frontage when 100 are called for.

Affirmed.

### ORDER

Now, October 8, 1987, the order of the Court of Common Pleas of Montgomery County, dated February 20, 1986, at No. 85-04687, is affirmed.