548 A.2d 1297

Township of Middletown, Appellant *v.* Middletown Township Zoning Hearing Board, Appellee.

*Thomas E. Timby, Timby and Dillon, P.C.*, for appellant.

*Thomas J. Profy, III, Begley, Carlin & Mandio,* for appellee.

OPINION BY JUDGE DOYLE, October 5, 1988:

The Township of Middletown (Township) appeals from an order of the Court of Common Pleas of Bucks County which, following a remand, reversed a decision of the Middletown Township Zoning Hearing Board (Board) and granted a nonconforming lot certificate to Frank Polizzi (Polizzi). We affirm.

There are two parcels relevant to this case; Lot 135 and Lot 136.[1] Lot 135 is rectangular in shape and contains 9,979 square feet. Lot 136 is triangular in shape and contains 8,095 square feet in area. These two parcels were always adjacent to each other, were always held in "single and separate ownership," and prior to 1965 were zoned R-3, which required a minimum lot area of 5,000 square feet in order to construct a single-family dwelling.

In 1965, the area was rezoned R-2, which required a minimum lot area of 10,000 square feet in order to build. As a result of this zoning change, Lot 136 became nonconforming as to the lot area requirement.[2] Both Lot 135 and Lot 136 continued to be held in "single and separate ownership."

Polizzi purchased Lot 136 on April 7, 1980, and seven days later he purchased Lot 135 and took title in a separate deed from a different seller. Prior to Polizzi's purchase of Lot 135 and Lot 136 the parcels were never in common ownership.

In March, 1982, Polizzi applied to the Board for a certificate of nonconformance for Lot 136 pursuant to Section 1805 of the Township zoning ordinance. Section 1805 provides:

A. A building may be erected or altered on a lot which is not of the required minimum areas or width, provided a certificate of nonconformance has been issued for that lot by the Zoning Hearing Board.

---

[1] Lot 136 was created in 1954 by the subdivision of a larger parcel (identified as Lot 136) into two lots (now identified as Lot 136 and Lot 136-1).

[2] Lot 135 is also nonconforming. The Middletown Township Zoning Hearing Board, however, has treated Lot 135 throughout this litigation as though it conforms to the requirements of the 1965 zoning ordinance.

B. *A certificate of nonconformance shall be issued for a lot which has been held in single and separate ownership since the effective date of the lot area and width requirements applicable to the lot.*

C. If a building is erected or altered on a lot pursuant to a certificate of nonconformance, that building must comply with all applicable area and design requirements *except minimum lot area or width*. Any other deviation from those requirements shall be permitted only by variance. (Emphasis added).

Polizzi also applied for variances from the ordinance's lot size, side-yard and/or rear-yard requirements.[3]

After three hearings the Board denied both the variances and the request for a certificate of nonconformance. It held that Polizzi's purchase of Lot 135 and Lot 136 in 1980 brought the parcels into common ownership and made both lots a single parcel. Thus, the Board reasoned that the lots were not held in "single and separate ownership," and, accordingly, denied the certificate of nonconformance. The Board also denied the variance requests on the ground that the variances would not be needed given the merger of Lots 135 and 136, which, taken together, would meet the requirements of the zoning code.

Polizzi appealed to the court of common pleas. While the appeal was pending Polizzi sold Lot 135 in September of 1983. That court reversed the Board on the "single and separate ownership" issue and directed the Board to issue a certificate of nonconformance for Lot 136. The court also remanded the case to the Board for the taking of additional evidence on the variance re-

---

[3] A triangular lot can either have one rear yard or two side yards, but not both.

quests. The Township appealed that decision to this Court, but we quashed the appeal in an unreported opinion as interlocutory.[4]

Upon remand, the Board certified Lot 136 as nonconforming pursuant to the common pleas court's remand order. The Board also conducted a hearing on the variance requests. It developed during the hearing that Polizzi had submitted a revised plot plan which would have satisfied the aggregate twenty-five foot side-yard requirement imposed on the property by the Board's previous decision, thus rendering a decision on the side and rear-yard variance requests moot. The Board, however, denied the lot area variance requests because it felt the Polizzi's two lots had merged.[5]

The Township appealed the Board's grant of nonconformance to the common pleas court. That court, without taking additional evidence, reaffirmed its prior decision and also held that the Board's denial of a lot size variance was reversible error. This appeal followed.[6]

The Township's sole arument in this case is that whenever two adjoining properties come into common ownership "automatic merger" occurs. It cites a number

---

[4] No. 1666 C.D. 1984, filed November 1, 1985.

[5] We fail to see why the Board found it necessary to pass on the lot area variance given the common pleas court remand order and Section 1805(C), which exempts anyone holding a certificate of nonconformance from having to comply with the ordinance's lot area requirements.

[6] Our scope of review in a zoning appeal where the common pleas court takes no additional evidence is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). A zoning hearing board abuses its discretion when its factual findings are unsupported by substantial evidence. *Id*.

of common pleas court decisions to this effect.[7] Polizzi's argument to the contrary is also supported by lower court decisions,[8] which state that when a landowner takes title to two contiguous lots which have been separately described in a deed, the landowner is presumed not to have intended to "merge" the lots in the absence of evidence to the contrary.

The term "merger" as it is being used by these courts and in this context is meant to describe the effect of a zoning ordinance on undersized lots held in common ownership. *West Goshen Township v. Crater,* 114 Pa. Commonwealth Ct. 245, 538 A.2d 952 (1988). The rule advocated by Polizzi, that the "merger" of lots is not to be presumed in the absence of evidence to the contrary, correctly states one of the exceptions to the doctrine of *merger of estates in land.*[9] *Griffith v. Mc-Keever,* 259 Pa. 605, 103 A. 335 (1918); *see also Danhouse's Estate,* 130 Pa. 256, 18 A. 621 (1889). We

---

[7] *Alexander v. Abington Township Zoning Hearing Board,* 104 Montg. Co. L.R. 231 (C.P. Pa. 1978); *Campbell v. West Norriton Township,* 93 Montg. Co. L.R. 430 (C.P. Pa. 1970); *Yusem v. Lower Merion Township,* 84 Montg. Co. L.R. 104 (C.P. Pa. 1964); *Anders v. East Norriton Township Board of Adjustment,* 31 Pa. D. & C. 2d 297 (1963); *Cutler v. Cheltenham Township,* 82 Montg. Co. L.R. 89 (C.P. Pa. 1963); *Wade v. Board of Adjustment of Ridley Township,* 51 Del. 222 (C.P. Pa. 1963).

[8] *Grace Building Co., Inc. v. Lower Southampton Township Zoning Hearing Board,* 39 Bucks Co. L. Rep. 348 (C.P. Pa. 1982); *McCormick v. Buckingham Township Zoning Board of Adjustment,* 19 Bucks Co. L. Rep. 51 (C.P. Pa. 1969); *Ginter Appeal,* 42 Pa. D. & C. 2d 657 (1967); *Burnside v. Willistown Township,* 12 Ches. Co. Rep. 282 (C.P. Pa. 1964); *Zoning Appeal of Killhour and Capriolo,* 10 Ches. Co. Rep. 153 (C.P. Pa. 1961).

[9] The doctrine of merger of estates in land provides that whenever a greater estate and a lesser estate meet in the same person, the lesser estate is merged or subsumed in the greater one. *West Goshen Township v. Crater,* 114 Pa. Commonwealth Ct. 245, 538 A.2d 952 (1988).

held in *Crater*, however, that the merger of estates doctrine had no application to the law of zoning and the construction of a zoning ordinance where the issue is the *physical* merger of lots or parcels of land. *Id.*

Because we do not accept the theoretical underpinnings of Polizzi's argument, it does not follow, however, that we must accept the Township's "automatic merger" argument. Indeed, we rejected the concept of "automatic merger" in *Parkside Associates, Inc. v. Zoning Hearing Board of Montgomery Township*, 110 Pa. Commonwealth Ct. 157, 532 A.2d 47 (1987), where we stated that "[w]e cannot agree with such a rule, for it would prohibit a landowner from purchasing and building upon an adjoining lot under the terms of an ordinance such as the present one." *Id.* at 161, 532 A.2d at 49. As has been pointed out, there is " 'little point in developing a rule which would say "this lot may be purchased and developed by any person except the owner of the neighboring land." ' " *Crater*, 114 Pa. Commonwealth Ct. at 253, 538 A.2d at 956 (quoting *Scott v. Fox*, 63 Del. 401, 406 (1976), *aff'd*, 36 Pa. Commonwealth Ct. 92, 387 A.2d 1308 (1978)).

Judge BARRY further explained in *Parkside Associates* that:

> Exceptions for lots predating a zoning ordinance are not personal, but must be deemed to run with the land. If it can be shown that a property owner who purchases adjoining tracts does not intend to keep the adjoining tracts separate and distinct, that intent should be honored when questions such as presented here arise.

*Id.* at 161, 532 A.2d at 49. Thus, where a landowner or one of his predecessor's-in-title has brought into common ownership two adjoining parcels of land prior to the enactment of a zoning ordinance which makes the parcel(s) nonconforming, the landowner bears the bur-

den of proving that he or his predecessors intended to keep the parcels "separate and distinct" and not make them part of one integrated tract. *Crater,* 114 Pa. Commonwealth Ct. at 251, 538 A.2d at 954. The proof required by the landowner(s) to show that he, or they, intended to keep the parcels separate and distinct from one another must be grounded upon some overt, unequivocal, physical manifestation of this intent, and not be based solely on the landowner's subjective statements regarding intent. *Id.* Further, each case must be determined on its own facts and circumstances."

It is undisputed here that both lots were held in "single and separate ownership" at the time of the passage of the ordinance. Therefore, Polizzi has met his burden under *Crater* and *Parkside Associates.* This is not to say, however, that once two adjoining lots are shown to be in "single and separate ownership" at the time of the relevant zoning ordinance, these lots must *always* be developed as two separate parcels. For example, a landowner who has acquired two adjoining lots after the passage of a zoning ordinance which rendered one or both of the lots undersized may *use* both lots in such a manner so as to integrate both lots into one large tract (explicitly demonstrated by building a house which straddles the common border). The municipality bears the burden of showing that the landowner has integrated the lots into one large parcel. Placing the burden upon the municipality in this context is essentially no different than placing the burden of proving the abandonment of a nonconforming use upon the party asserting it. *Epting v. Marion Township Zoning Hearing Board,* 110 Pa. Commonwealth Ct. 389, 532 A.2d 537 (1987), *petition for allowance of appeal denied,* 518 Pa. 628, 541 A.2d 1139 (1988). In the text of Ryan, Pennsylvania Zoning Law and Practice §6.3.3 (1970), the author

makes the observation that cases such as this can be treated as matters of nonconformance or variance.

Here, the Township presented *no* evidence whatsoever to show that Polizzi intended to use Lots 135 and 136 as one integrated parcel; it instead relied upon the "automatic merger" concept. Indeed, all the evidence points to the contrary conclusion that Polizzi intended to hold the parcels in single and separate ownership. Polizzi testified that his initial intent was to construct houses on both Lots 135 and 136; one for him and his wife and one for his son's family. He took each parcel by separate deed from a different grantor and undertook within a year to develop Lot 136 separately by filing for a certificate of nonconformance. Polizzi also made no attempt to develop either Lot 135 or 136, either singly or separately, during the Board proceedings. Further, when the Board's initial decision was adverse to him, he sold off Lot 135 in 1983 because he could not sustain the cost of holding two parcels. These facts bespeak an intent to develop the lots separately and not as one parcel.

Accordingly, because we have determined that the trial court correctly concluded that the two parcels were held in single and separate ownership, the order of the Court of Common Pleas of Bucks County is affirmed.

## ORDER

Now, October 5, 1988, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

This decision was reached prior to the resignation of Judge MACPHAIL.