## TINICUM TOWNSHIP

v.

Barbara JONES, Dorothy Kallenbach, Marian Meyer, Estate of Marian Schaefer, Robert S. Kallenbach and Diane Luck Kallenbach.

**Appeal of Barbara Jones, Dorothy Kallenbach, Marian Meyer and Estate of Marian Schaefer, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1998.

Decided Dec. 15, 1998.

Reargument Denied Feb. 25, 1999.

---

**1070**

Steven A. Cotlar, Doylestown, for appellant.

Robert J. Sugarman, Philadelphia, for appellee.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Barbara Jones, Dorothy Kallenbach, Marian Meyer and estate of Marian Schaefer (collectively Owners) appeal from an order of the Court of Common Pleas of Bucks County entering judgment in favor of Tinicum Township (Township) in an action in equity and enjoining the Owners from conveying two adjoining lots as separate lots.

The following facts found by the trial court are undisputed. In 1945, Peter and Marian Schaefer (the Schaefers) purchased a .897–acre lot (Lot 1) and built their residence thereon. In 1971, the Township enacted subdivision and zoning ordinances setting forth, *inter alia*, a 1.5–acre minimum lot area requirement, which rendered Lot 1 undersized. Subsequently in 1973, the Schaefers purchased an adjoining lot (Lot 2) consisting of 2.02 acres. In 1974, the Schaefers conveyed .09–acre portion of Lot 2 to the adjoining property owner after obtaining approval of the Township, thereby reducing the size of Lot 2 to 1.93 acres. In 1982, the Township

amended the zoning ordinance increasing the minimum lot area for the RA Residential Agricultural zoning district, where Lot 1 and Lot 2 are currently located, to two acres.

Peter Schaefer thereafter predeceased Marian Schaefer who died on June 8, 1994. After Marian Schaefer's death, her daughters, Barbara Jones, Marian Meyer and Dorothy Kallenbach, were appointed as executrices. By separate deeds dated August 21, 1995, the executrices conveyed Lot 2 to themselves and Lot 1 to Robert Kallenbach, the Schaefers' grandson, and his wife for $112,000. In June 1996, the executrices entered into an agreement to sell Lot 2 for $45,000.

In August 1996, the Township commenced the instant action in equity, seeking to enjoin the Owners from conveying Lot 1 and Lot 2 as two separate lots. In the subsequently amended complaint, the Township alleged that Lot 1 and Lot 2 did not meet the current two-acre minimum lot area requirement; after their purchase of Lot 2 in 1973, the Schaefers merged Lot 1 and Lot 2 into one large lot which would then meet the minimum lot area requirement; and by conveying the two lots separately, the Owners "subdivided" the merged lot without obtaining approval of the Township, in violation of Section 107 of the subdivision ordinance.

After a bench trial, the trial court concluded that the Owners had the burden of proving that the Schaefers did not physically merge Lot 1 and Lot 2 into one large residential lot. Determining that the Owners failed to meet their burden, the trial court issued a decree nisi, in which it entered judgment in favor of the Township and enjoined the Owners from conveying Lot 1 and Lot 2 as separate lots. The trial court thereafter denied the Owners' exceptions and made the decree nisi absolute. The Owners' appeal to this Court followed.

■ The Owners contend that the trial court misallocated the burden of proof on the issue of an alleged physical merger, and that the evidence presented at the trial does not establish a physical merger.[1]

---

1. This Court's scope of review of an order of the trial court in an action in equity is limited to determining whether the trial court abused its discretion or committed an error of law. *Sergi v.*

■ It is undisputed that Lot 1 was rendered undersized by the subdivision and zoning ordinances enacted in 1971. After Lot 1 and Lot 2 came into common ownership of the Schaefers in 1973, Lot 2 also became undersized as a result of the increase of the minimum lot size requirement to two acres in 1982. It is well established that a preexisting lot which has been rendered undersized by the subsequently enacted zoning requirement must be permitted either as a nonconforming lot or by a variance, to avoid a confiscation of property. *Jacquelin v. Horsham Township*, 10 Pa.Cmwlth. 473, 312 A.2d 124 (1973).

■ There are three distinct theories, under which development of an undersized lot predating zoning restrictions is permitted:

1. *No relief provision:* Where the zoning ordinance contains no express relief provision for pre-existing undersized lots, there may be entitlement to a variance to erect a permitted-use single-family dwelling in order to avoid complete unsuitability of the land.

2. *Special exception:* Where the ordinance contains a special exception provision allowing an undersized lot to be used, use entitlement may be based on special exception approval, but only if the standards and guidelines conditioning the special exception are met.

3. *Absolute exemption:* The zoning ordinance may contain a provision giving absolute and unqualified permission for use of an undersized lot for a permitted use, provided only that the record shows that the undersized lot existed before the adoption of zoning.

*Rogers v. Zoning Hearing Board of East Pikeland Township*, 103 Pa.Cmwlth. 478, 520 A.2d 922, 925 (1987). Any exceptions to zoning requirements provided for the lots predating the zoning ordinance are not personal, but run with land. *Parkside Assoc. v. Zoning Hearing Board of Montgomery Township*, 110 Pa.Cmwlth. 157, 532 A.2d 47 (1987).

In seeking to enjoin the Owners from conveying Lot 1 and Lot 2, the Township did not present any provision of the zoning ordinance which defines or regulates nonconforming lots undersized by the enactment or subsequent amendment of the zoning ordinance.[2] Instead, the Township proceeded on the theory that Lot 1 and Lot 2 were physically merged during common ownership of the Schaefers, and that the two lots therefore should be treated as one large residential lot for the purpose of determining compliance with the minimum lot area requirement.

■ Under the doctrine of merger of estate in land, a lesser estate is merged into a greater estate whenever the two estates meet in the same person. *Griffith v. McKeever*, 259 Pa. 605, 103 A. 335 (1918). The doctrine of merger of estate is, however, inapplicable to zoning law where, as here, the term "merger" is used to describe the effect of a zoning ordinance on the adjoining lots held in common ownership. *West Goshen Township v. Crater*, 114 Pa.Cmwlth. 245, 538 A.2d 952 (1988).

■ It is well established that mere common ownership of the adjoining lots does not automatically establish a physical merger of those lots for the purpose of determining whether those lots comply with the zoning requirements. *Parkside.* This Court reasoned: "if the first tract were already developed and the owner *acquired the adjacent lot* from another as an investment, then there seems little point in developing a rule which would say 'this lot may be purchased and developed by any person except the owner of the neighboring land.'" *Crater*, 538 A.2d at 956 (quoting *Scott v. Fox*, 63 Del.Co. 401, 406 (C.P.Pa.1976)) (emphasis in original). Thus, unless it is shown that an owner of the two adjoining lots which were undersized by the subsequently enacted zoning requirement did not intend to keep the lots separate and distinct, they may be developed as separate lots. *Parkside.* "The burden is placed upon the party who asserts a physical merger to

*School District of City of Pittsburgh*, 28 Pa. Cmwlth. 576, 368 A.2d 1359 (1977).

2. The Township submitted only a copy of Section 107 of the subdivision ordinance prohibiting a

subdivision without approval of the Township, the zoning map and the 1982 amendment setting forth the two-acre minimum lot area requirement.

establish the landowner's intent to integrate the adjoining lots into one large parcel." *Appeal of Gregor*, 156 Pa.Cmwlth. 418, 627 A.2d 308, 311 (1993).

■ In the instant action in equity, the Township claimed that the Owners' action to convey Lot 1 and Lot 2 as separate lots would constitute a "subdivision" of one large parcel created by a physical merger. Hence, as the party asserting a physical merger, the Township had the burden of establishing that the Schaefers did not intend to keep Lot 1 and Lot 2 as separate and distinct lots.

The trial court concluded, however, that the Owners had the burden of establishing that an alleged physical merger did not occur. In so concluding, the trial court relied on *Township of Middletown v. Middletown Township Zoning Hearing Board*, 120 Pa. Cmwlth. 238, 548 A.2d 1297 (1988), *appeal denied*, 522 Pa. 599, 562 A.2d 322 (1989), in which the zoning ordinance specifically provided that a lot held in "single and separate" ownership since the effective date of the zoning restrictions may be developed upon obtaining a certificate of nonconformance. It was undisputed that the adjoining lots were held in single and separate ownership at the time of the passage of the zoning ordinance. The issue raised in that case was whether a merger occurs automatically whenever two adjoining lots come into common ownership, as the township contended. In rejecting the township's contention, this Court further stated, however, that where the two adjoining parcels were brought into common ownership prior to the enactment of the zoning ordinance which rendered the parcels nonconforming, the landowner has the burden of proving that he or his predecessors intended to keep the parcels separate and distinct.

This Court's statement in *Township of Middletown* is merely a dictum which was unnecessary in disposing the issue raised in that case. As this Court subsequently noted in *Gregor*, in *Township of Middletown* the burden to establish integration of the adjoining lots was actually placed on the municipality which objected the owner's application for a certificate of nonconformance asserting a physical merger of the adjoining lots. Thus, contrary to the trial court's conclusion,

*Township of Middletown* does not stand for a proposition that the owners, whose adjoining lots have been rendered undersized during common ownership, must always disprove a physical merger in all proceedings, even where, as here, the municipality raised the issue of a physical merger.

■ It is fundamental that the plaintiff in an action in equity has the burden of proving allegations averred in the complaint. *Spang & Co. v. United States Steel Corp.*, 519 Pa. 14, 545 A.2d 861 (1988). Thus, placing the burden of proof on the Owners would result in requiring the defendants in this action in equity to disprove the Township's allegation of a physical merger set forth in the complaint. Hence, the trial court erred in placing the burden of proof on the Owner on the issue of an alleged physical merger.

■ Moreover, the facts found by the trial court do not establish that Lot 1 and Lot 2 were physically merged into one large residential lot. To establish a physical merger, evidence of some overt, unequivocal physical manifestation of the owner's intent to integrate the adjoining lots must exist. *Lebeduik v. Bethlehem Township Zoning Hearing Board*, 141 Pa.Cmwlth. 541, 596 A.2d 302 (1991).

As the trial court found, Lot 2 is a wooded lot. In the early 1980's, the Schaefers installed a split rail fence running along River Road covering the entire front of Lot 2 and slightly extending into Lot 1 about a three-post length. Beginning approximately thirty feet from River Road, the two lots are divided by a line of trees. The Schaefers mowed the entire Lot 1. Once a month, they also mowed the front twenty to thirty feet portion of Lot 2. After their purchase of Lot 2, the Schaefers moved a picnic table and a swing set located in Lot 1 to the mowed portion of Lot 2. No more than once a year, the Schaefers held a picnic in the area covering Lot 1 and Lot 2. The Schaefers' grandson played throughout Lot 1 and Lot 2 on a weekly basis. In 1990, the Township assigned a separate mailing address for each lot. The two lots are located in different taxing districts and are considered separate parcels for taxing purposes. The Schaefers and their

heirs received separate real estate tax bills for each lot. Trial Court's Findings of Fact Nos. 10–22.

The above findings fall short of any definite physical features held to be sufficient to establish the owners' intent to integrate the adjoining lots into one residential lot. *See, e.g., Lebeduik* (capping the sewer lateral and removing the hedge separating the parcels); *Price v. Bensalem Township Zoning Hearing Board,* 131 Pa.Cmwlth. 200, 569 A.2d 1030 (1990) (blacktopping the adjoining lots). Unlike *Alpine, Inc. v. Abington Township Zoning Hearing Board,* 654 A.2d 186 (Pa. Cmwlth.1995), the case relied on by the trial court, in which the entire adjoining lots were fenced in and maintained as one unit for fifty years, the fence installed in front of Lot 2 extended only slightly into Lot 1, and the two lots are divided by the line of trees.

The trial court's findings at best establish that the front portion of Lot 2 was maintained as a lawn area. As this Court held in *Gregor,* however, the evidence indicating that one of the adjoining lots existed as a vacant lawn area is not sufficient to establish a physical merger of those lots. Since the evidence failed to show any affirmative action taken by the Schaefers to change the separate and distinct character of the two lots, the trial court erred in finding that those lots were physically merged.

Accordingly, the order of the trial court is reversed.[3]

### ORDER

AND NOW, this 15th day of December, 1998, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is reversed.

---

**3.** Due to reversal of the trial court's decision, it is unnecessary to address the remaining issues raised by the Owners, i.e., whether the trial court improperly took judicial notice of the minimum lot area requirement, relying solely on the oral testimony of the Township's witness; whether the Township is equitably estopped from asserting violation of the subdivision ordinance; and whether the Owners are entitled to a de minimis variance from the minimum lot area requirement.