**Norman W. DUDLIK, Appellant**

v.

**UPPER MORELAND TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 25, 2003.

Decided Jan. 8, 2004.

Lynne P. Iannelli, Southampton, for appellant.

Carol M. Lauchmen, Harleysville, for appellee.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

## OPINION BY JUDGE SMITH–RIBNER.

Norman W. Dudlik (Dudlik) appeals from an order of the Court of Common Pleas of Montgomery County that affirmed the decision of the Zoning Hearing Board of Upper Moreland Township (Board) to deny his application for a special exception for a dimensional nonconformity or, in the alternative, for a dimensional variance to construct a single-family residence on an undersized lot.[1] Dudlik questions whether the Board abused its discretion and committed an error of law in denying his application for a special exception for a dimensional nonconformity and whether it abused its discretion and committed an error of law in denying a dimensional variance.

---

1. This case was reassigned to this author on October 23, 2003.

## I

In 1952 Edward R. Dudlik purchased a parcel in Upper Moreland Township (Township) identified in the record as Lot 197. On June 23, 1976, Edward Dudlik and his wife Jane R. Dudlik purchased the two smaller lots on either side, Lots 196 and 198, the latter of which is the subject of this appeal. All three lots front on Shoemaker Road, and Lot 198 is at the intersection with a short road leading to a Township park behind the lots. From 1976 until 1999 the Dudliks resided in the dwelling on Lot 197. In 1999 the Dudliks sold Lots 196 and 197 to Joanne Carr, but they retained Lot 198. When the Dudliks purchased Lots 196 and 198 the district was zoned for one-half acre (21,780 square feet) lots. Shortly after the purchase, the district was zoned R–1, with a one-acre minimum lot size for a single-family residence. When combined, the three lots totaled approximately 1.3 acres. After conveying Lots 196 and 197 to Carr, the Dudliks were left with Lot 198, which is 110 feet wide and 200 feet deep, approximately 22,000 square feet or slightly over one-half acre.[2]

After the conveyance, the Dudliks' son Norman Dudlik, who was authorized by his father to represent him regarding Lot 198, applied to the Board for a special exception for a dimensional nonconformity or, in the alternative, for a dimensional variance to construct a single-family residence. At a hearing on the application, Edward Dudlik testified that the area formerly was zoned for one-half-acre lots and that several nearby properties are lots of roughly one-half acre. He testified that the three parcels were taxed separately and that at some point in the mid–1990s separate sewer laterals were installed on all three par-

cels. He agreed with the statement that Lot 198 was used as a side yard for the house on Lot 197 "for lack of a better description," N.T. at p. 15, although he stated that it was not his intention to use the lots together. An objector who lives nearby testified that he thought that a structure on the lot would not be in keeping with the neighborhood, which has basically one-acre lots.

The Board denied the request for a special exception on the ground that Lot 198 was not held in single and separate ownership when the Township Zoning Code was enacted. The Board cited *Parkside Assocs., Inc. v. Zoning Hearing Board of Montgomery Township*, 110 Pa.Cmwlth. 157, 532 A.2d 47 (1987), for the proposition that a lesser estate is merged into a larger one when they are not kept separate and distinct, and the intent of the owner at the time the zoning ordinance is enacted controls. The Board referred to *Jacquelin v. Zoning Hearing Board of Hatboro Borough*, 126 Pa.Cmwlth. 20, 558 A.2d 189 (1989), and stated there was no physical manifestation of the intent of the owner to keep the parcels separate and distinct; the separate taxation and sewer laterals were not deemed to be material. Even without such a merger the Board concluded that Dudlik would not be entitled to a special exception under Sections 21.01 and 23.02 of the Upper Moreland Township Zoning Ordinance, and it stated that construction of a single-family residence on Lot 198 would be detrimental to the neighborhood.

The Board also denied Dudlik's request for a variance. It cited Section 23.20 of the Zoning Ordinance, which provided that a variance could be authorized "as provided under Section 912 of the Municipalities Planning Code [MPC]." Board Opinion at p. 5.[3] The Board denied a vari-

---

2. Although a different figure was mentioned in the hearing, an acre is 43,560 square feet.

3. Former Section 912 of the Pennsylvania Municipalities Planning Code, Act of July 31,

ance on the grounds that Dudlik failed to offer any proof concerning unnecessary hardship, any hardship that existed was self-created and the construction of a house close to adjacent property would impair the use of the adjacent property and alter the essential character of the neighborhood. Dudlik appealed to the trial court, which denied the appeal after hearing the matter en banc.[4]

## II

Dudlik refers to the special exception provision of Section 21.01(a) of the Zoning Ordinance, which provides as follows:

> On any lot that has been or hereafter is rendered nonconforming as to the lot area or lot width regulations of the district in which it is located by the terms of this ordinance or any amendments thereof, and which, at the time it acquires such nonconforming status, was held in a single and separate ownership and thereafter continues to be held in single and separate ownership, a building may be erected when authorized as a special exception by the Zoning Hearing Board.

Section 1.03(31) of the Zoning Ordinance defines "Lot held in Single and Separate Ownership" as "A lot the owners of which are not identical with the owners of any lot adjoining the rear or either side of said lot." Additionally, Dudlik cites *Parkside* for the proposition that in determining whether two adjoining parcels have been merged into one parcel, it is the intent of the landowner at the time of enactment of the ordinance that controls, and he argues

that in *Tinicum Township v. Jones*, 723 A.2d 1068 (Pa.Cmwlth.1998), the Court stated that to establish physical merger of adjacent lots owned by the same property owner, there must be evidence of some overt, unequivocal physical manifestation of the owner's intent to integrate the lots. Further, he cites *Appeal of Gregor*, 156 Pa.Cmwlth. 418, 627 A.2d 308 (1993), as holding that the party who asserts a physical merger bears the burden of establishing the landowner's intent to integrate the lots into one large lot.

Dudlik contends that the evidence as a whole shows that Edward Dudlik did not take affirmative action to merge Lot 198 into Lot 197. The deed description from 1976 and the tax map both show the lot known as Lot 198 as distinct, although the tax map shows Lot 196 merged with Lot 197. There is no evidence that Lot 198 was landscaped or maintained as a part of Lot 197 or of anything such as a driveway on Lot 198 for the use of Lot 197. Despite Edward Dudlik's agreement that Lot 198 was used as a side yard for Lot 197 for lack of a better description, there was no evidence of appurtenant use. In fact, the sole objector testified that he thought that Edward Dudlik requested the installation of a separate sewer lateral for Lot 198. Citing *Jones* and *Gregor*, Dudlik asserts that where an owner maintains a residence on one tract of land and later purchases an adjacent lot, that evidence alone is not sufficient to establish a merger of the lots.

He maintains that circumstances here are different from those in *Jacquelin*

---

1968, P.L. 805, *as amended, formerly* 53 P.S. § 10912, was repealed by Section 90 of the Act of December 21, 1988, P.L. 1329, and was replaced by Section 910.2, added by Section 89 of the same Act, 53 P.S. § 10910.2.

**4.** This Court's review when a trial court takes no additional evidence in a land use appeal is

limited to determining whether the zoning board abused its discretion or committed an error of law. *8131 Roosevelt Corp. v. Zoning Board of Adjustment of City of Philadelphia*, 794 A.2d 963 (Pa.Cmwlth.), *appeal denied*, 571 Pa. 712, 812 A.2d 1232 (2002).

where the adjacent lots were purchased seven years apart but were landscaped and maintained as one and later sold under a single deed. In *Lebeduik v. Bethlehem Township Zoning Hearing Board*, 141 Pa. Cmwlth. 541, 596 A.2d 302 (1991), there was evidence of actions showing an intent to merge adjacent lots, including the capping of a sewer lateral for the vacant lot and the removal of a hedge between the properties, and in *Price v. Bensalem Township Zoning Hearing Board*, 131 Pa. Cmwlth. 200, 569 A.2d 1030 (1990), adjoining lots were blacktopped for use together. Dudlik argues that the Board abused its discretion in determining that construction of a single-family residence on this lot would adversely affect the community, where evidence showed homes nearby were on similarly sized lots.

The Board indicates that Section 21.01 of the Zoning Ordinance permits construction on an undersized lot held in single and separate ownership at the time of the zoning change. The Board cites *Parkside* and other cases where an owner was denied a special exception to build on an undersized lot because at the time of the imposition of the ordinance size requirement the lot was held in common ownership with other lots. Moreover, the Board argues that even if no merger occurred, there was no abuse of discretion in denying the special exception because Dudlik failed to meet his burden under Section 23.03(1) of the Zoning Ordinance to show no adverse effect.

### III

The Court notes that in *Parkside* the ordinance provided that a building might be erected on an undersized lot held in single and separate ownership on the effective date of the ordinance, and it defined single and separate ownership as "the ownership of property by any person, which ownership is separate and distinct from that of adjoining property." In *Parkside* three lots in two parcels (A and B) were conveyed under a single deed in 1951, and a zoning ordinance adopted in 1952 rendered Parcel B undersized. The three lots were conveyed together again in 1955 and 1966. In 1976 Parcel A was sold, and in 1984 permission was sought to build on Parcel B. Concluding that under the ordinance the Court must look to the intent of the owner at the time of enactment, the Court held there was no evidence to indicate the intent of the landowners at that time to treat the parcels as separate and distinct. The Court, however, expressly rejected the ruling of the zoning hearing board and the trial court that an automatic merger occurs whenever adjoining properties come into common ownership. Thus the Court held that more than just titles in deeds must be examined to determine the question of "single and separate ownership" under such an ordinance.

In *West Goshen Township v. Crater*, 114 Pa.Cmwlth. 245, 538 A.2d 952 (1988), owners purchased a single-family home on three lots, one described separately in the deed; an ordinance adopted shortly thereafter rendered the separately described lot undersized, and the owner later requested a special exception to build on the lot under an ordinance section providing that permission to erect a building on a nonconforming lot could be granted as a special exception where the lot was in single and separate ownership at the effective date of the chapter. This Court noted that the ordinance defined single and separate ownership as ownership by one or more persons, partnerships or corporations "which ownership is separate and distinct from that of any abutting or adjoining lot." *West Goshen Township*, 538 A.2d at 954. The Court held that subjective intent was not determinative, but rather there must be proof by the owner of some physical

manifestation on the land of intent to hold properties in single and separate ownership. However, the Court again forcefully rejected the notion that the doctrine of merger as it relates to different interests in estates has any application to the law of zoning. *See also Jacquelin* (under ordinance with very similar language, physical merger of lots before zoning enactment is determinative).

Thus in many cases an ordinance permits building upon a lot later rendered nonconforming where adjoining lots were held in single and separate ownership, and it defines that term simply as ownership that is separate and distinct from that of adjoining property. In such cases the Court has held that a common owner of adjoining parcels at the time of enactment may nevertheless attempt to prove by physical evidence an intent to hold and to use them separately.

Certain cases that Dudlik relied upon concern a factually distinct scenario in which adjacent lots were not in common ownership when an ordinance provision was enacted but an adjoining lot was acquired later. In *Gregor* owners purchased an adjacent lot across a plotted but unopened road after a zoning change requiring frontage on a public street, and after they sold the first lot they claimed an easement right of access and sought a variance. The issue was whether the lots merged while in common ownership. The Court cited *Township of Middletown v. Middletown Township Zoning Hearing Board*, 120 Pa.Cmwlth. 238, 548 A.2d 1297 (1988), which held that where there was no dispute that lots were held in single and separate ownership at the time of enactment of an ordinance that rendered one of them nonconforming, the burden was on the party claiming a physical merger to establish the owners' intent to integrate the adjoining tracts into one large parcel

by presenting evidence of some overt, unequivocal manifestation of the owners' intent to integrate the lots through affirmative actions. In *Jones*, where the second lot was purchased after the adoption of a 1.5–acre minimum lot size, the Court reiterated that the doctrine of merger of interests in estates does not apply to zoning law and that mere common ownership does not automatically establish a physical merger. The burden was placed on the party asserting physical merger to prove it.

■ In the present case, the definition of "single and separate ownership" in the ordinance is different from that in the cases discussed above. This ordinance defines such a lot as a lot "the owners of which are not identical with any lot adjoining...." That definition legislatively imposes the result that the Court declined to impose under language such as that in *Parkside*, which required only ownership that was "separate and distinct" from that of adjoining property. Under this ordinance, therefore, common ownership at the time of enactment of the zoning change is sufficient to merge properties for zoning purposes, and the Board's so deeming them to be merged was the correct result.

Dudlik's second contention is that Board erred or abused its discretion in denying his alternative request for a variance. He acknowledges the applicability of standards for the grant of a variance derived from the MPC, but he also notes that in *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), the Supreme Court held that the standard for determining whether unnecessary hardship exists is less stringent in a case involving only a dimensional variance as opposed to a use variance and that economic hardship may be considered. He cites *Scott v. Fox*, 63 Del. 401 (C.P.Pa. 1976), *aff'd on the trial court opinion*, 36 Pa.Cmwlth. 88, 387 A.2d 965 (1978), where

a special exception to build on an undersized lot was denied because the lot was deemed not to have been held in single and separate ownership when the zoning ordinance was adopted, but a variance to build was granted even though the owner remained the same. Here, he notes, the owners are different after the sale to Carr.

■ The Board responds that under Section 910.2 of the MPC, 53 P.S. § 10910.2, Dudlik failed to put forward any evidence of unique physical conditions or circumstances of the property warranting relief or that any unnecessary hardship that exists was not created by the appellant. The Court agrees that the hardship here was self-created when the Dudliks, although owning adjacent lots sufficient to comply with minimum area requirements, chose to convey only two lots to Carr and to keep the undersized Lot 198. Accordingly, as the Court discerns no error in the Board's decision to deny Dudlik's application, it affirms the trial court's order.

## ORDER

AND NOW, this 8th day of January, 2004, the order of the Court of Common Pleas of Montgomery County is affirmed.

LEAVITT, J., concurs in the result only.