John W. Harper and G. Leonard Rappold, III, *v.* The Zoning Hearing Board of Ridley Township. Township of Ridley (Intervenor), Appellant.

John W. Harper and Jane Harper, his wife, *v.* The Zoning Hearing Board of Ridley Township. Township of Ridley (Intervenor), Appellant.

G. Leonard Rappold, III, *v.* The Zoning Hearing Board of Ridley Township. Township of Ridley (Intervenor), Appellant.

94

Argued April 4, 1975, before Judges KRAMER, WILKINSON, JR. and BLATT, sitting as a panel of three.

*R. Paul Lessy,* for appellant.

*F. Kirk Adams,* for appellees.

OPINION BY JUDGE BLATT, August 14, 1975:

These three appeals, consolidated for the purpose of argument before this Court, involve three requests for variances for three separate lots in Ridley Township (Township). All three requests were denied by the Township's Zoning Hearing Board (Board) which, after holding hearings, issued its adjudication on February 11, 1974 refusing all of the petitions. On appeal to the Court of Common Pleas of Delaware County, however, the landowners involved in each appeal were successful and, in three separate opinions dated October 24, October 31, and November 12, that court, without taking additional evidence, reversed the Board and ordered that all three variances be granted.

Our scope of review in zoning appeals involving requests for variances, where the lower court has taken no additional evidence, is limited to a determination of whether or not the Board abused its discretion or committed an error of law. *AFSO Builders, Inc. v. The Zoning Hearing Board of the Township of Upper Darby,* 12 Pa. Commonwealth Ct. 100, 314 A.2d 860 (1974); *The Boulevard Land Corporation v. Zoning Board of Adjustment,* 8 Pa. Commonwealth Ct. 584, 303 A.2d 234 (1973). We cannot accept the Township's assertion that our scope of review should be narrower. If zoning boards were allowed to grant variances at their own absolute discretion, they would, in effect, be enacting zoning legislation by a piecemeal process. *See Michener Appeal,* 382 Pa. 401, 115 A.2d 367 (1955).

Section 912 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10912 sets out the Board's function in considering requests for variances and also establishes the conditions

under which variances may be granted. All three of these appeals involve situations in which the hardship asserted is similar to that which we considered to be appropriate for a variance in *Jacquelin v. Horsham Township,* 10 Pa. Commonwealth Ct. 473, 312 A.2d 124 (1973). Here, as in *Jacquelin,* all of the landowners seek variances in order to avoid the minimum dimensional requirements of the zoning ordinance for "B" residential districts, and they wish to build residences on their lots. Section 402 of the Township Zoning Ordinance, however, imposes the following restrictions in "B" residential districts:

> "The building area shall not exceed thirty per cent (30%) of the lot area, and in no case shall any building be erected on any lot with an area of less than 5,000 square feet and a width of less than 50 feet at the front building line."

All of the lots in question fail to meet the minimum width of fifty feet. In addition, one contains less than the 5,000 square feet minimum area. Otherwise, building plans in each case appear to conform to the requirements of the zoning ordinance.

The minimum area and width requirements of Section 402 of the ordinance were initially adopted by the Township in 1970. Prior to that time, although Section 402 merely stated:

> "The building area shall not exceed thirty per cent (30%) of the lot area.,"

Section 405 then provided:

> "In case of a single family dwelling there shall be two side yards, one on each side of the main building, the aggregate widths of which shall be at least twenty (20) feet. Neither side yard shall be less than eight (8) feet wide. Provided, that in the case of a lot held in single and separate ownership at the effective date of this Ordinance of a width less than fifty (50) feet, a single-family dwelling may be built thereon with side yards of less width, when authorized as a special ex-

ception by the Board of Adjustment, and provided further, that in case of a single-family dwelling constructed with its greater dimension parallel with the front street a one-story porch, either enclosed or unenclosed, may project into one of the side yards, provided the width of such side yard is not thereby reduced to less than the required minimum of eight (8) feet."

It is obvious that Section 405 of the ordinance, as in effect prior to 1970, did not prevent the construction of a building on a lot less than 50 feet in width. It merely established the minimum sideyard setbacks applicable to every building regardless of the width of the lot on which the building was to be constructed, and it relaxed the standard for lots of a width less than 50 feet when such lots had been held in single and separate ownership since the effective date of the ordinance (1937). Lots of less than fifty feet in width, therefore, could clearly be built upon until 1970, even if acquired after 1937, so long as the standard sideyard requirements and all other valid conditions prescribed in the ordinance were met. We must, therefore, consider the 50-foot minimum width requirement as having first been imposed, along with the minimum area requirement, in 1970.

### APPEAL NO. 1523 C. D. 1974

The lot covered in this appeal, located on Washington Avenue in a "B" residential zoning district, is owned by John W. Harper and G. Leonard Rappold, III, who acquired it on March 23, 1971 upon the dissolution of Harco, Inc., which had owned the property since 1965. These two current owners had been the sole shareholders of Harco, Inc., and upon its dissolution, the lot had been distributed to them. It is 40 feet wide along Washington Avenue and 125 feet deep, with an area of 5000 square feet. They propose to build a two-story single family residence on the lot. The Board found that "[s]ince [both

owners] acquired the premises with knowledge of the zoning regulations any hardship they claim is self-imposed and cannot serve to justify the grant of a variance." The Board apparently reached this conclusion by relying on *McClure Appeal*, 415 Pa. 285, 203 A.2d 534 (1964) and other cases cited by the Township for the proposition that one who seeks a variance cannot be heard to complain of a hardship when that hardship was present to his knowledge when he purchased the property. More recently, however, in *Gro Appeal*, 440 Pa. 552, 269 A.2d 876 (1970) our Supreme Court has narrowed the circumstances under which a landowner who purchases with knowledge of the property's condition and the existing zoning classification will be prevented from obtaining a variance. According to *Gro*, such a landowner's hardship is self-inflicted only where he has paid a high price for the property because he assumed that a variance which he anticipated would justify that price. The mere fact that he purchased with knowledge of the hardship would not alone preclude his being granted a variance. *See Borough of Ingram v. Sinicrope*, 8 Pa. Commonwealth Ct. 448, 303 A.2d 855 (1973). The owners of this lot, however, were not "purchasers" at all in 1971 when they acquired the property as a result of Harco, Inc.'s dissolution. Clearly, they were not speculators who paid a high price and gambled on obtaining a variance. On the contrary, they paid no price at all, acquiring the lot simply by reason of being the sole stockholders of the previously dissolved corporate owner. Moreover, the corporation had acquired the lot in 1965, five years before the restrictions were enacted, so neither it nor the current owners could then have known of such restrictions.

*APPEAL NO. 1524 C. D. 1974*

This lot is also 40 feet wide and 125 feet deep, and it is located on Jackson Avenue in a "B" residential district. It is owned by John W. Harper and his wife, and Mr.

Harper testified that they had purchased the lot in 1963 from Sara K. Gibson.[1] The Harpers also propose to construct a two-story single family dwelling on their lot. A variance was rejected first for the reason that the owners had refused to sell their lot to the owner and resident of an adjacent lot on the south who apparently wanted to use the lot for additional yard space. Secondly, the Board found that Mr. Harper, who owned this lot with his wife, held an adjacent lot to the north, being a tenant in common there with his business partner, and the Board reasoned that his alleged hardship resulted from his desire to split a larger conforming tract for the purpose of maximizing his economic gain. However, refusal to sell to an adjacent lot owner who would not require a variance cannot provide the basis for denying a variance. What price would such an adjacent lot owner be expected to be willing to pay for such a lot, knowing that he and the other adjacent landowners, if any, were the only ones who could make any reasonable use of it? As the Board's Chairman himself pointed out in reference to a witness's estimate that the lot here was worth $1,000:

> "Again, as I said, Mr. Shang has pointed out the lot could be worth $1,000. I was wondering for what, other than to sell it to a neighbor? What else could you do with it? The average neighbor will give you a $1,000 for it. That's an assumption. Suppose the average neighbor says $15.?"

The township also relies on *Volpe Appeal,* 384 Pa. 374, 121 A.2d 97 (1956) in arguing that Harper's part ownership of the adjacent lot to the north should prevent his being granted a variance. In *Volpe,* however, the landowner had subdivided a single large tract into two lots, one of which was not large enough to build on according

---

1. In testifying to this purchase, Harper corrected his testimony at an earlier hearing to the effect that the property had been inherited through his father's estate.

to the minimum area requirements of the ordinance in effect at the time of the subdivision, and the landowner there was properly denied a variance to build on the smaller lot because he had created the hardship himself by his subdividing. Unlike the landowner in *Volpe,* however, Harper and his wife cannot be considered responsible for the fact that their lot is too small. There is obviously no unity of ownership between the subject property and its neighbor to the north nor has there ever been unity of ownership during any time when the fifty foot requirement has been in effect. The two lots have entirely separate chains of title.

### APPEAL NO. 1525 C. D. 1974

This lot, which is 40 feet wide and 100 feet deep, with an area of 4000 square feet, is located on Fernwood Avenue, also in a "B" residential district. It is owned by G. Leonard Rappold and his wife, who purchased it at a county treasurer's sale in 1962. They likewise now propose to build a single family dwelling on the premises. As to this lot, the Township argues that the Board was correct in holding that the grant of a variance under the circumstances of this case would be "detrimental to the public welfare." This conclusion was based on the Board's finding that: "The property in question has a severe drainage problem which would be aggravated by construction." Yet, as the lower court held, this finding is unsupported by the record. A neighbor did state her opinion that a drainage problem presently exists, but nowhere in the record is there the slightest indication that building on the lot will aggravate the problem in any way. One seeking a variance, of course, must not only prove unnecessary hardship but he must also show that the variance, if granted, will not adversely affect the public health, safety or welfare. *Commissioners of Plymouth Township v. Wannop,* 13 Pa. Commonwealth Ct. 237, 320 A.2d 455 (1974); *Surrick v. Zoning Hearing Board of the Township*

*of Upper Providence*, 11 Pa. Commonwealth Ct. 607, 314 A.2d 565 (1974). Yet, here the owner refers in his brief to an engineering study which was submitted to the court below and which allegedly indicates that the grant of the variance and construction of the residence will alleviate the drainage problem. He contends, therefore, that he met his burden of proof. The report, however, does not appear in the record forwarded to this Court. If there is such evidence, and if the lower court on remand will consider it, that court may make its own findings. See Section 1010 of the MPC, 53 P.S. §11010.

We, therefore, affirm the lower court in Appeals Nos. 1523, and 1524 and remand No. 1525 to the lower court so that the parties thereto may be given an opportunity to enter evidence into the record concerning the adverse effect, if any, which the grant of a variance will have on the existing drainage problem and so that a determination may then be properly made as to whether or not a variance should be allowed in accordance with this opinion.