**Mary Ann COTTONE and Reflection Builders Enterprise, Inc., Appellants**

v.

**ZONING HEARING BOARD OF POLK TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2008.

Decided Aug. 15, 2008.

---

Daniel P. Lyons, Stroudsburg, for appellants.

Robert C. Lear and Richard E. Deetz, Stroudsburg, for appellees, Zoning Hearing Board of Polk Township and Township of Polk.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Mary Ann Cottone (Cottone) and Reflection Builders Enterprise, Inc. (collectively, Landowners) appeal an order of the Court of Common Pleas of Monroe County (trial court) holding that Cottone cannot build a house on her .3–acre lot because the zoning ordinance requires a minimum one-acre lot for a house served by well water and on-lot sewage treatment. Cottone's lot was part of a subdivision plan approved by the County and the Township but never developed before the Township enacted the zoning ordinance in question. The trial court affirmed the decision of the Polk Township Zoning Hearing Board (Zoning Board) that the zoning ordinance had the effect of merging Cottone's lot with the adjoining lots. In this case we consider, *inter alia*, whether the zoning ordinance effected a merger of Cottone's lot with adjoining lots in spite of the fact that the size of her lot had been established in an approved subdivision plan; was separately deeded; and separately taxed.

Cottone's property, Lot 75Q, was one of sixteen undeveloped lots located in the Robin Hood Lakes Development, the plan for which was approved in 1975 by the Monroe County Planning Commission and by the Polk Township Supervisors. Each lot in Robin Hood Lakes was just under .3

acres in size, and each was owned by New 1901 Corporation from 1966 to 2003. On March 15, 1986, before New 1901 Corporation acted upon its approved plan, Polk Township enacted legislation effecting a change in the minimum lot size required for residential construction. This zoning ordinance required a lot size of at least one acre for construction of a home in the R–1 Zone that would not be served by central water and sewer. The sixteen lots owned by New 1901 Corporation were located in the R–1 Zone and were not served by central water and sewer.

Beginning in 2000, New 1901 Corporation stopped paying the real estate taxes on the sixteen lots. In November of 2003, the Monroe County Tax Claim Bureau sold all of the sixteen lots to Reflection at the price of $601 per lot. Each lot was transferred to Reflection by a separate tax deed and was separately recorded. Thereafter, Reflection sold Lot 75Q to Cottone for $10,000. Until that sale, all sixteen lots had been under common ownership from 1966 to July 22, 2005, *i.e.,* the date Cottone took title to Lot 75Q.

On August 5, 2005, a Polk Township Zoning Officer sent a letter to Reflection and Cottone stating that Lot 75Q did not comply with the minimum lot size requirement for residential construction. On November 1, 2005, Cottone applied for a permit to build on Lot 75Q, which was denied on November 30, 2005, by the Polk Township Zoning Officer. Landowners appealed, and, alternatively, requested a variance to construct a home on Lot 75Q. The Zoning Board conducted a hearing after which it denied both requests. The Zoning Board found that because Lot 75Q and the adjoining lots in Robin Hood Lakes had been under common ownership when the ordinance was enacted, it was Landowners' burden to establish that it had been the intent of New 1901 Corporation to maintain the lots as separate and distinct parcels in spite of the zoning amendment. Because Landowners could not satisfy this burden, the Zoning Board affirmed the denial of Cottone's building permit. It also refused to grant Cottone a special exception or variance.

 On April 12, 2006, Landowners appealed to the trial court, and it affirmed the Zoning Board. First, the trial court rejected Landowners' claim that the "grandfather" provision of Section 508 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508,[1] exempted Lot 75Q from the zoning ordinance's one-acre minimum requirement for residential construction. The trial court reasoned that New 1901 Corporation's exemption had lapsed after five years. Next, the trial court reviewed the merger doctrine and concluded that the doctrine required Landowners to prove that the nonconforming lots in Robin Hood Lakes were intended to be kept separate and distinct even though they were under common ownership, and Landowners did not meet this burden. Finally, the trial court concluded that Landowners did not satisfy the elements necessary for a variance because the hardship was one of Landowners' own making, since they knew of the lot size requirements when they made their re-

---

**1.** Section 508(4)(ii) provides in relevant part: When an application for approval of a plat, whether preliminary or final, has been approved without conditions or approved by the applicant's acceptance of conditions, *no subsequent change or amendment in the zoning,* subdivision or other governing ordinance or plan *shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development* in accordance with the terms of such approval *within five years from such approval* ....
53.P.S. § 10508(4)(ii).

spective purchases. The present appeal followed.[2]

Before this Court, Landowners raise two issues.[3] First, they contend that the trial court erred in concluding that the Zoning Ordinance merged Lot 75Q with the adjoining lots. Second, they contend that the trial court erred in placing the burden on Landowners to prove that Lot 75Q had *not* merged with one or more adjoining lots. Rather, they contend that it was Polk Township's burden to prove that Landowners, or their predecessors, intended to merge the lots.[4] For its part, the Township argues that Landowners waived all issues in their appeal by not responding to the August 5, 2005, letter they received from the Polk Township Zoning Officer.

▆▆▆ We begin with a review of merger principles. In general, mere common ownership of adjoining properties does not *automatically* result in a physical merger of the properties for zoning purposes. *Dudlik v. Upper Moreland Township Zon-* *ing Hearing Board,* 840 A.2d 1048, 1052–53 (Pa.Cmwlth.2004); *Daley v. Zoning Hearing Board of Upper Moreland Township,* 770 A.2d 815, 819 (Pa.Cmwlth.2001). On the other hand, adjoining properties under common ownership can merge when a zoning ordinance provision causes one or more of the adjoining lots to become undersized, depending on the facts and circumstances of each case. *Township of Middletown v. Middletown Township Zoning Hearing Board,* 120 Pa.Cmwlth. 238, 548 A.2d 1297, 1300 (1988). The focus of the inquiry is upon (1) when the properties in question came under common ownership and (2) the effective date of the applicable zoning ordinance.

▆▆▆ Adjoining lots under separate ownership before a zoning ordinance enactment makes the lots too small to build upon are presumed to remain separate and distinct lots. Should those adjoining, undersized lots be thereafter acquired by a

2. When no additional evidence is taken following the determination of a zoning hearing board, an appellate court's scope of review is limited to determining whether the zoning board committed an error of law or a manifest abuse of discretion in rendering its decision. *Noah's Ark Christian Child Care Center, Inc. v. Zoning Hearing Board of West Mifflin,* 584 Pa. 9, 10, 880 A.2d 596 (2005) (citations omitted). An abuse of discretion will be found only where the zoning hearing board's findings are not supported by substantial evidence. *Larsen v. Zoning Board of Adjustment of City of Pittsburgh,* 543 Pa. 415, 421, 672 A.2d 286, 289 (1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association. v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

3. This case was originally argued before a panel on September 4, 2007. By order of this Court, this case was listed for oral argument before this Court sitting *en banc* to address the following issues:
1. Whether landowners, Mary Ann Cottone and Reflection Builders Enterprise, Inc.,

satisfied the standard of overt or physical manifestation of intent to keep the lots in question separate and distinct by showing that the lots were approved pursuant to a [subdivision and land development ordinance], were taxed separately and were established in a recorded subdivision plan.
2. Whether testimonial evidence was needed from New 1901 Corporation, the owner and developer of the lots in question at the time the Zoning Ordinance increased the minimum lot size, in order to establish an intent to keep the lots separate and distinct.
3. Whether a developer abandons an intent to keep lots in its approved subdivision separate and distinct when it fails to pay real estate taxes on the lots.
The *en banc* argument was held on April 9, 2008.

4. Landowners do not challenge the trial court's conclusion that Section 508 of the MPC did not exempt the lots in Robin Hood Lakes from subsequent legislation affecting minimum lot sizes.

single owner, the burden is on the municipality to show that the new common owner has merged the two lots into one. *In re Appeal of Puleo,* 729 A.2d 654, 656 (Pa. Cmwlth.1999). Otherwise, the result would be to permit separate development of each lot by any person other than the common owner. *Parkside Associates, Inc. v. Zoning Hearing Board of Montgomery Township,* 110 Pa.Cmwlth. 157, 532 A.2d 47, 49 (1987).

A review of *Middletown* is instructive on the municipality's burden to show a merger of undersized lots. In *Middletown,* two adjoining lots were owned by different persons when a zoning ordinance was passed rendering each of the two lots too small for building. Thereafter, a single person purchased the two adjoining lots. This Court held that the municipality bore the burden of proving that the new owner had integrated the two nonconforming lots into one parcel. *Middletown,* 548 A.2d at 1300. The evidence showed that the new owner intended to construct a house on each lot, and to that end had purchased each parcel at a different time and from a different owner. This Court concluded that the municipality did not prove that the new owner had integrated the two lots. Accordingly, we held that the two parcels continued to be single and separate lots, notwithstanding their common owner. *Id.*[5]

On the other hand, lots are presumed to merge as necessary to comply with a zoning ordinance's lot size requirements where they are under common ownership prior to the passage of the ordinance.[6] It is the landowner's burden to rebut this presumption by proving an in-

tent to keep the lots separate and distinct. *In re Appeal of Puleo,* 729 A.2d at 656. In doing so, the landowner's subjective intent is not determinative; rather, there must be proof of some overt or physical manifestation of intent to keep the lots in question separate and distinct. *Dudlik,* 840 A.2d at 1052–1053.

*Lebeduik v. Bethlehem Township Zoning Hearing Board,* 141 Pa.Cmwlth. 541, 596 A.2d 302 (1991) is instructive on the landowner's burden in rebutting the merger presumption. In *Lebeduik,* a property owner sold Parcel A and applied for a permit to build on the adjoining Parcel B. It was uncontested that the property owner had acquired the two adjoining parcels *prior* to the enactment of the ordinance. As a result, the landowner bore the burden of proving that it intended to keep the parcels "separate and distinct." *Id.* at 305.

To meet his burden, the landowner presented evidence that the two parcels were conveyed by separate deeds, taxed separately, had separate sewer lines, and were separated by a hedge. *Id.* In response, the municipality introduced evidence that the landowner had removed the hedge and capped the sewer line to Parcel B prior to the enactment of the ordinance. Additionally, the municipality presented evidence that the landowner had induced a third party to purchase Parcel A by assuring the buyer that Parcel B would not be developed. Based on this record, this Court concluded that the landowner "failed to prove that [it] intended to keep Parcel B separate and distinct from Parcel A" and,

---

**5.** *See also In re: Appeal of Puleo,* 729 A.2d 654 (holding that two adjoining lots were not physically merged because the township failed to meet its burden to prove that the landowner integrated the two parcels that had been under separate and single ownership at the time the ordinance was enacted).

**6.** Without this presumption, an undersized and nonconforming property would escape the requirements of the zoning ordinance, rendering the ordinance ineffective and meaningless.

therefore, we upheld the denial of a permit to build on Parcel B. *Id.* at 305–06.

Likewise, in *West Goshen Township v. Crater,* 114 Pa.Cmwlth. 245, 538 A.2d 952 (1988), the landowner failed to rebut the presumption of merger. In *West Goshen,* the landowner purchased property described in an approved subdivision plan as Lots 26, 27, and 28. Just prior to purchasing the property, the landowner contacted the township administrator to inquire whether Lot 28 could be sold and developed separately as a residential property. The township advised the landowner Lot 28 could be developed separately because it was a separate lot in an approved subdivision plan. Shortly after the landowner purchased the three lots, the township enacted a zoning ordinance that rendered Lot 28 too small to build upon. Almost twenty years later, the landowner inquired of the township whether it would issue a residential building permit for Lot 28 if the landowner were to convey it to another party. The township responded that it would deny a building permit because Lot 28 was too small.

The landowner appealed. Because Lot 28 had been under common ownership with Lots 26 and 27 when the zoning ordinance was passed, the landowner had the burden of rebutting the presumption that the lots had merged. *Id.* In determining whether the landowner had proved an intent to keep the three lots separate and distinct, this Court explained:

> Since we may look to the *use* of a property to determine whether it is in single and separate ownership, it also follows that the fact that lots are shown separately on plans or are described separately in deeds is not per se, determinative of the issue.

*Id.* at 955 n. 2 (emphasis in original). Because Lot 28 consisted of vacant land, it could not be distinguished in any way from the other lots owned by landowner. Because the landowner failed to meet its evidentiary burden, this Court held that Lot 28 had merged with the adjoining lots.

In summary, if two adjoining, but separately-owned, lots are rendered undersized by a zoning ordinance enactment, the two properties will not be affected by the ordinance. Each lot will continue to be a lawful, non-conforming size for purposes of the zoning ordinance. If those two lots later come under common ownership, the burden is upon the municipality to prove that the new owner intended to use the two lots as one integrated parcel. On the other hand, if the same two adjoining lots are under common ownership when a zoning ordinance is passed that renders each property undersized, then the two lots are presumed to have merged. The burden is on the landowner to rebut the presumption.

We turn, then, to the relevant provision of the Polk Township Zoning Ordinance, which embodies the above-summarized merger principles. Section 5(2)(b) provides that lots held by separate owners on the day the Zoning Ordinance makes them undersized can continue to be used separately; Section 5(2)(c) states, on the other hand, that lots under common ownership that become undersized by the ordinance merge. Specifically, Section 5 of the Zoning Ordinance states as follows:

2. Nonconforming lots—

\* \* \*

> b. *A nonconforming lot* which was lawful when created and *which, prior to the effective date of this Ordinance, was separated in ownership from any adjoining tracts of land may be used* for a one family residence in any district where such use is permitted, provided such lot shall

be developed in conformity with all applicable district regulations other than minimum lot area, lot widths and yards....

 c. *If two or more lots or parts thereof having adjoining frontage or otherwise being adjoining and having single ownership* as recorded at the Monroe County Courthouse *on the effective date of Ordinance 86–1,* that being March 15, 1986, or at anytime thereafter, and if all or part of the said lots do not meet the requirements established for lot width and/or area of the Zoning Ordinance, as amended, *the lots shall be considered by the Township to be a single lot* for the purposes of the application of Polk Township's Ordinances and no conveyance or division of any such lot shall be made which creates or continues lot width and/or area below the requirement stated in this Ordinance.

POLK TOWNSHIP ZONING ORDINANCE, art. 5, § 5.9(c)(2)(b), and (c), *as amended* (2004) (emphasis added). Reproduced Record at 124a, 133a. These provisions were in effect when Reflection, and subsequently Cottone, purchased Lot 75Q.

Landowners assert that the trial court misconstrued Section 5.9(c)(2). They contend that Cottone is entitled to a building permit under Section 5.9(c)(2)(b) because Lot 75Q, intended for a single family house, was lawful when created by subdivision in 1975. Landowners misread this provision of the ordinance. To apply, Lot 75Q had to be separately owned "prior to the effective date of this Ordinance." POLK TOWNSHIP ZONING ORDINANCE, § 5.9(c)(2)(b). Lot 75Q is separately owned today, but it was one of sixteen lots commonly owned by New 1901 Corporation in 1986, when the ordinance was passed. Section 5.9(c)(2)(b) of the Zoning Ordinance does not apply to Lot 75Q, and the trial court correctly construed this part of the ordinance.

The trial court then determined that Section 5.9(c)(2)(c) of the Zoning Ordinance placed the burden on Landowners to prove the intent of their predecessor-in-interest, New 1901 Corporation, to keep Lot 75Q separate and distinct from the adjoining lots. This was because the lots were under common ownership in 1986 when the zoning ordinance established a minimum lot size of one acre for houses served by wells and on-lot sewage treatment systems. Landowners contend that the burden was not upon them; rather, they contend that it was Polk Township's burden to show that the common owner had merged Lot 75Q with the adjoining lots. In support, Landowners direct the Court to Tinicum Township v. Jones, 723 A.2d 1068 (Pa.Cmwlth.1998).

In *Tinicum Township,* the landowners in question purchased a lot in 1945 on which they built their home (Lot One). Thereafter, in 1971, the township enacted an ordinance that rendered Lot One undersized. In 1973, the landowners purchased an adjoining lot (Lot Two). The landowners then attempted to sell Lot One and the township brought an action to enjoin the sale, which was granted by the trial court. In granting the injunction, the trial court placed the burden upon the landowners to prove Lots One and Two had not merged. This Court reversed. First, we concluded that the burden was not upon the landowners but upon the township. This was because Lot Two had been separately owned when the ordinance was enacted. Second, the township's evidence did not show that the landowners took any steps to merge the two lots. Accordingly, the landowners were able to sell Lot One.

Landowners' reliance upon *Tinicum Township* is misplaced. That case dealt with adjacent lots that were separately owned when the ordinance was enacted. *See Dudlik*, 840 A.2d at 1053 (explaining that *Tinicum Township* applies where adjacent lots were under separate and distinct ownership at the time the ordinance became effective). In this case, Lot 75Q was under common ownership with the adjoining properties at the time the Polk Township Zoning Ordinance was passed in 1986. *Tinicum Township* is inapposite.

Under Section 5.9(c)(2)(c) of the Zoning Ordinance, Lot 75Q was presumed to merge with adjoining lots owned by New 1901 Corporation when the ordinance was enacted. Accordingly, the trial court was correct in placing the burden upon Landowners to rebut the presumption by proving that New 1901 Corporation intended to keep the sixteen lots "separate and distinct" after the ordinance became effective.

■ In order to meet its burden, Landowners were required to produce evidence of some overt or physical manifestation of intent to keep the lots in question separate and distinct. *Dudlik*, 840 A.2d at 1052–1053. Landowners claimed that they proved Lot 75Q was separate and distinct because Reflection purchased each lot separately and each lot had a separate deed

and separate tax identification number. Further, each lot size was established in an approved subdivision plan. However, these abstract legal attributes do not carry the day. *See West Goshen Township*, 538 A.2d at 955 n. 2 (evidence that the lots were shown separately on an approved subdivision plan and described separately in deeds not found adequate to prove physical manifestation); *Jacquelin v. Zoning Hearing Board of Hatboro Borough*, 126 Pa.Cmwlth. 20, 558 A.2d 189, 192 (1989) (holding that lots served by separate utilities, described separately in the deed and taxed separately did not constitute "physical manifestations" of intent to separate the two lots).[7] A *physical manifestation* of the intention to keep adjoining lots separate and distinct consists of a line of trees, a fence or wall separating the lots. *Tinicum*, 723 A.2d at 1073; *West Goshen*, 538 A.2d at 955.

Landowners' evidence relating to the deed and tax history of Lot 75Q was inadequate to prove Lot 75Q was intended to be kept separate and distinct from the adjoining lots after passage of the Zoning Ordinance. Landowners were required to present physical evidence of separation, such as a wall, that kept Lot 75Q distinct from adjoining lots, and they did not do so. Accordingly, the trial court correctly held that the Landowners failed to prove that

7. Under Section 508(4)(ii) of the MPC, 53 P.S. § 10508(4)(ii), a previously approved subdivision plan is grandfathered and exempt from provisions in a zoning ordinance contrary to the approved plan. However, a grandfathered plan only remains exempt from subsequent zoning changes for five years after the preliminary plan is approved. If the subdivision is not completed within that time, the plan's grandfathered status expires and the current zoning ordinance becomes applicable. *See* Sections 508(4)(ii)-(iv) of the MPC, 53 P.S. § 10508(4)(ii)-(iv); *see also Appeal of Central Penn Bank*, 47 Pa.Cmwlth. 334, 408 A.2d 550, 551 (1979)(holding that the expiration of the time limit in Section 508 of the MPC puts a

landowner of property in an approved subdivision plan in the same position as any other landowner subject to the existing zoning requirements).

In the present case, Landowners presented no evidence that New 1901 Corporation completed the approved subdivision plan within five years. Indeed, the evidence suggests that the only thing New 1901 Corporation did with the sixteen lots following the 1975 approval of the subdivision plan was stop paying real estate taxes on the lots in 2000. Accordingly, Section 508 of the MPC does not exempt Lot 75Q from Polk Township's minimum lot size zoning ordinance.

Lot 75Q was separate and distinct from the adjoining properties and, therefore, properly affirmed the Zoning Board's denial of Cottone's permit to build on Lot 75Q.

Based on the foregoing, we affirm the order of the trial court.[8]

## ORDER

AND NOW, this 15th day of August, 2008, the order of the Court of Common Pleas of Monroe County dated January 12, 2007, in the above captioned matter is hereby AFFIRMED.

---

8. Based on our holding, we need not reach the Township's waiver issue, which, in any case, lacks merit. A zoning officer's gratuitous advice given in writing is not a determination.