IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ABH Builders, Inc.,                           :
                    Appellant                  :
                                               :
            v.                                 :
                                               :
Lower Providence Township        :    No. 889 C.D. 2020
Zoning Hearing Board                 :    Argued: November 14, 2022


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON              FILED:   December 22, 2022


            ABH Builders, Inc. (ABH) appeals from an order of the Montgomery

County Court of Common Pleas (trial court) denying ABH's appeal from a decision

of the Lower Providence Township (Township) Zoning Hearing Board (Board).[1]

ABH applied for a special exception and dimensional variances to allow

construction of a residence on an undersized property in a residential zoning district.

The Board denied the special exception and variance requests.

            The Board's decision, as approved by the trial court, reflects a

longstanding effort by the Township to prevent construction of homes on very small

lots in a subdivision that existed before the enactment of the zoning ordinance.

Notwithstanding any potentially confiscatory implications of such an effort, we are

---

[1] The Township intervened as a party on appeal.  Original Record, Item # 10.

constrained to agree with the Board that ABH failed to sustain its burden of proof in this case. Therefore, we must affirm the trial court's order.

## I. Background

In the early 1900s, movie theaters in Philadelphia raffled small tracts of real property, known colloquially as "movie lots," to customers. Reproduced Record (RR) at 70a-71a, 139a & 204a. In 1920, a recorded subdivision plan (subdivision plan) depicted several hundred such lots located in the Township. *Id.* at 27a & 82a. The movie lots in the subdivision were generally 20 feet wide by 112 feet deep (2240 square feet). *See id.* at 48a & 204a. The record does not indicate when, or whether, any of the lots in this particular subdivision were actually conveyed individually to movie theater patrons or any other purchasers.

In 1955, the Township enacted its first zoning ordinance. RR at 47a. The record does not include the zoning ordinance's original provisions, although there was testimony that it required a minimum building lot size of 30,000 square feet in the residential zoning district. *Id.* at 55a-56a. The current zoning ordinance[2] permits single-family detached dwellings in the Township's R-1 residential zoning district. *Id.* at 137a. Construction of a home in the R-1 zoning district requires a minimum lot size of 65,000 square feet, a minimum lot width and road frontage of 195 feet, minimum front and side yard setbacks of 50 feet, and a minimum rear setback of 65 feet. *Id.* at 137a-38a. Thus, each movie lot is grossly smaller than the minimum lot size in the R-1 zoning district, and the setback requirements for the

---

[2] Although parts of the zoning ordinance were amended in 2020, the current provisions cited herein include the same area and setback requirements as the previous version of the zoning ordinance cited by the parties that was in effect in 2017 when ABH filed its application.

zoning district leave no envelope for any construction on a movie lot.  *See* RR at 204a.

ABH is the equitable owner of an aggregation of four contiguous vacant movie lots in the R-1 zoning district on South Grange Avenue in the Township (Property) that were part of the 1920 subdivision plan.  RR at 137a.  The Property is 80 feet wide by 112 feet deep.  *Id.*  Containing 8,236 square feet after deductions for rights-of-way, the Property is less than 13% of the area required for a building lot under the current zoning ordinance.  *See id.* at 137a-38a & 144a.  It also has less than 40% of the required width and road frontage.  *Id.* at 144a.  Moreover, as noted above, the current setback requirements overlap, leaving no envelope for construction on the Property.  *See id.* at 204a.

In September 2017, ABH applied for a special exception and dimensional variances to allow construction on the Property of a two-story single-family home with a footprint of 1,200 square feet (24 feet by 50 feet).  RR at 138a. The special exception request related to the nonconforming lot area and width, while the dimensional variance requests related to the required setbacks.  *Id.* at 138a-39a.

After a public hearing, the Board denied ABH's request for a special exception.  The Board explained that the Property is "grossly undersized" compared to the minimum lot size required by the zoning ordinance.  RR at 144a.  The Board acknowledged that the movie lots have existed since the early 1900s and stated that they "have been the subject of numerous variance applications."[3]  *Id.*  Moreover, the

---

[3] The outcomes of any prior similar variance applications are not part of the record, although a Board member observed during the hearing that several applications were denied earlier that year involving larger nonconforming tracts than the Property.  RR at 78a.  Research revealed no such cases having been appealed to this Court, and the parties have cited no previous court decisions regarding special exceptions or variances involving any of the movie lots in the Township.  However, we note that this Court has previously affirmed the denial of a special

3

Board posited that the Township's supervisors "had to know" at the time the Township created the R-1 zoning district that construction on the preexisting movie lots would be impossible unless sufficient lots were combined to meet the R-1 lot size requirements.[4] *Id.* at 144a-45a. However, the Board concluded that the Township had the power under Section 604 of the Pennsylvania Municipalities Planning Code[5] (MPC), 53 P.S. § 10604, to enact zoning to safeguard the public health, safety, and welfare by control of "proper density of population." *Id.* at 145a.

The Board observed that the zoning ordinance allows special exceptions for nonconforming lots that were "of public record in single and separate ownership" when the zoning ordinance was adopted in 1955. RR at 146a (additional quotation marks and Board's added emphasis omitted). The Board concluded the four lots comprising the Property were "consolidated" in an October 1968 deed and, therefore, the Property was not in "single and separate ownership" in 1955;[6] thus, the Property does not meet the requirement for a special exception. *Id.* at 146a-47a.

Further, the Board opined that a special exception would contravene the public interest because it would allow ABH "to build a long and narrow home in a district that contains and encourages significantly larger homes." RR at 147a. The Board expressed concern that granting relief in this case would lead to adverse

---

exception and a variance by the zoning hearing board of nearby Lower Merion Township in a similar case involving property consisting of a group of four nonconforming lots, each 20 by 100 feet in size. *See In re Appeal of Grace Bldg. Co.*, 392 A.2d 888, 889-90 (Pa. Cmwlth. 1978).

[4] Our calculation indicates that at least 30 contiguous movie lots (65,000 ÷ 2240, rounded up to the next whole number) would be required in order to meet the minimum lot size requirement. Moreover, the joined lots would have to be configured so as to make the resulting lot deep enough to accommodate the front and rear setbacks and still allow for construction on the lot.

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 – 11202.

[6] We question the validity of this reasoning; however, it is not material to our disposition of this appeal.

4

impact on the public welfare "as more and more special exceptions are granted based upon the same theory" and more homes are built on nonconforming movie lots. *Id.* at 148a-49a. The Board expounded:

> Granting the special exception will beget more of the same development that will convert what is otherwise a pleasant, manageable neighborhood of larger structures with significant distances between homes into an urbanized anomaly that is the antithesis of this suburban township. Public policy is in no way served by such unbridled use of undersized lots.

*Id.* at 149a.

Regarding the variance requests, the Board suggested they were moot because the Property did not qualify for a special exception. *Id.* at 150a. Nonetheless, the Board considered and denied the variance requests on their merits as well. *Id.*

The Board concluded that the zoning ordinance did not create an unnecessary hardship to ABH because it did not work a confiscation of the Property. RR at 150a. This was so, according to the Board, because neighbors attending the hearing expressed interest in purchasing the Property in order to prevent construction from occurring on it.[7] *Id.* The Board also pointed to ABH's conditional agreement to purchase the Property as evidence of its marketability.[8] *Id.* However, the Board

---

[7] However, in *Harper v. Zoning Hearing Board*, 343 A.2d 381, 384 (Pa. Cmwlth. 1975), we concluded a zoning hearing board erred by denying a variance on the basis that the applicants had refused to sell their nonconforming lot to an adjacent lot owner who just wanted additional yard space and would not require a variance. As we observed in *Harper*: "What price would such an adjacent lot owner be expected to be willing to pay for such a lot, knowing that he and the other adjacent landowners, if any, were the only ones who could make any reasonable use of it?" *Id.*

[8] ABH's purchase is conditioned on obtaining the necessary special exception and variances. *See* RR at 13a. Thus, the conditional purchase agreement cannot be viewed as supporting the marketability of the Property in the absence of the requested zoning relief.

5

did not point to any use ABH could make of the Property in the absence of zoning relief.[9]

The Board further opined that the requested dimensional variances would forever alter the neighborhood's essential character, impair adjacent properties by allowing construction of smaller homes on smaller lots, and adversely affect the public welfare. RR at 151a. According to the Board, "[a]ltering the dimensions [of the setbacks] to permit the construction of a home on a woefully undersized lot in an R-1 district undercuts the very purpose of the [zoning o]rdinance and the public interest of regulation of population density." *Id.*

Finally, the Board concluded the variances were not merited because "[t]he requested relief is not the minimum variance that will afford the required relief." RR at 152a. However, the Board did not explain this bare conclusion or point to any lesser variance that would provide any relief to ABH. *See id.*

The Board made clear that it denied the special exception and variances based partly on concerns well beyond the effects of one house built on one nonconforming lot. As set forth above, the Board feared that granting one special exception would lead to many more homes built on other small movie lots. RR at 148a-49a. The Board expressed similar concerns that if it granted the variances sought for the Property, "the flood gates of others seeking similar variances [would] eventually swing open using this case as precedent." *Id.* at 151a.

ABH appealed the Board's decision to the trial court, which took no additional evidence and denied the appeal without an opinion in an order dated

---

[9] The other permitted uses in the R-1 zoning district – agricultural, golf course, and institutional/municipal/recreational/utility – currently require minimum areas of 5, 130, and 2 acres, respectively. LOWER PROVIDENCE TWP., PA. ZONING CODE, § 143-33 (2020).

6

August 7, 2020. The trial court explained its reasoning in a subsequent opinion issued pursuant to Pa.R.A.P. 1925(a). *See generally* RR at 203a-10a.

The trial court acknowledged that because of the Property's small size and the large setbacks required by the zoning ordinance, "there is no building envelope on the property" without zoning relief. RR at 204a. However, the trial court observed that the record was insufficient to establish when the four movie lots comprising the Property were aggregated or whether, prior to 1955, they had merged for zoning purposes with any additional contiguous lots that may previously have been held along with the Property by one owner. *Id.* at 209a. Thus, the trial court denied ABH's appeal because ABH "failed to prove that the [P]roperty was held in single and separate ownership at the time the zoning ordinance was enacted, as required to seek a special exception." *Id.* at 207a-08a.

The trial court did not decide the variance issue, concluding that "without a special exception, the request for a variance is moot."[10] RR at 209a. ABH then appealed to this Court.[11]

---

[10] The trial court offered to address the variance issue on a remand in the event this Court determines the issue is not moot. RR at 209a. Our disposition of this appeal makes a remand unnecessary.

[11] Because the trial court took no additional evidence, our review of its decision is limited to determining whether the zoning board manifestly abused its discretion or committed an error of law. *In re Appeal of Moyer*, 978 A.2d 405, 408 n.4 (Pa. Cmwlth. 2009) (citing *In re Puleo*, 729 A.2d 654, 656 n.3 (Pa. Cmwlth. 1999)). The Board is the finder of fact. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). As such, the Board is the sole judge of the credibility of witnesses and the weight afforded their testimony; this Court may not substitute its interpretation of the evidence for that of the Board. *Id.* The Board is free to reject even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness. *Id.*

7

## II. Issues

On appeal, ABH asserts several errors, which we summarize and reorder as follows.

ABH contends the Board abused its discretion, committed legal error, and acted arbitrarily by denying the special exception. ABH's expert witness opined that the proposed construction on the Property was appropriate because single-family dwellings are permitted in the R-1 zoning district, the proposed structure is of a reasonable size for the size of the Property, and a special exception for one single-family home will not affect the health, safety, and welfare of the surrounding community. Moreover, a proposed use is presumed consistent with health, safety, and welfare once the applicant demonstrates compliance with zoning ordinance requirements. Thereafter, an objector must show a high probability of adverse impacts in order to overcome that presumption. ABH asserts that it demonstrated its right to a special exception, and no objector offered evidence that would overcome ABH's presumptive entitlement to relief. Specifically, ABH contends it established that the Property's four separate lots were held in single and separate ownership before the Township enacted the zoning ordinance, and the Property currently consists of four preexisting nonconforming lots. According to ABH, the purported former ownership of the Property along with four additional contiguous lots by a single owner does not affect ABH's entitlement to relief, because even all eight lots together would not comply with the zoning ordinance's lot size requirement.[12] Moreover, despite their common ownership, the lots comprising the Property were transferred as separate lots – albeit on one deed – and remain

---

[12] ABH does not explain how the nonconforming nature of one aggregation of eight movie lots would entitle the owner to divide the lots further into *two or more* nonconforming aggregations of lots.

separately depicted on the local tax map. Finally, ABH suggests that general considerations such as the public welfare are insufficiently specific to support denial of a special exception, which must be governed by reasonably definite standards.

Similarly, ABH argues that the Board abused its discretion, committed legal error, and acted arbitrarily by denying the dimensional variances from the area and setback requirements of the zoning ordinance. ABH explains that the Property is not buildable without the variances because the setbacks leave no envelope for construction of any residential building. ABH suggests the planned two-story residence, with a footprint of 1,200 square feet, is the smallest dwelling that can reasonably be constructed on the Property. ABH posits that the Property meets the requirements for a variance provided in Section 910.2 of the MPC, added by the Act of Dec. 21, 1988, P.L. 1329, 53 P.S. § 10910.2, and that its supporting evidence was uncontradicted.

Further, ABH contends that the denial of its special exception and variance requests was confiscatory because it eliminated any possible use of the Property. ABH reiterates that the setback requirements overlap such that there is no building envelope without variances to reduce the setbacks. ABH observes that the law requires relief to avoid confiscation of property where area and setback requirements prevent the reasonable use of a preexisting undersized lot. ABH argues that each of the four movie lots comprising the Property was nonconforming in size at the time the Township enacted the zoning ordinance and has remained nonconforming in size since that time. In ABH's view, whether or not the lots are consolidated, the Property has never been large enough to meet the zoning ordinance's requirements.

9

Finally, ABH asserts that the Board abused its discretion, committed legal error, and acted arbitrarily to the extent that it denied relief based on concerns that granting relief regarding the Property will create a precedent that will lead to a flood of demands for special exceptions and variances regarding other similar undersized lots. ABH insists that it was entitled to have its requests for zoning relief decided on their own merits, without regard to any alleged potential effects on other landowners' applications for relief.

## III. Discussion
### A. Special Exception

The zoning ordinance provides for special exceptions to allow construction on undersized lots that preexisted the ordinance's enactment.[13] The zoning ordinance states that "[a] nonconforming lot which is of public record in single and separate ownership at the time of the enactment of the zoning ordinance, namely May 8, 1955, may, by special exception, be used for a permitted use in the district in which it is located." LOWER PROVIDENCE TWP., PA. ZONING CODE, § 143-145 (2006).[14] The zoning ordinance defines "single and separate ownership" as "the

---

[13] In this regard, the special exception provision of the zoning ordinance merely reflects longstanding precedents delineating constitutional limits on zoning, which forbid confiscating property by improperly restricting its development. *See, e.g.*, *Taylor v. Haverford Twp.*, 149 A. 639, 643 (Pa. 1930) (concluding that zoning ordinance, enacted 24 years after plaintiff bought and held land for commercial use, was unconstitutionally confiscatory, where it rezoned the property as residential although it was surrounded by existing commercial development and could not reasonably be used for residential purposes).

[14] Section 143-145 of the zoning ordinance was amended in 2020. The applicable section now provides, in pertinent part: "A[n] existing nonconforming lot which, continuously from before the time of the enactment of the original Lower Providence Township Zoning Ordinance on May 8, 1955, has been of lawful public record and in single and separate ownership may be utilized for construction of a single family detached dwelling . . . ." LOWER PROVIDENCE TWP., PA. ZONING CODE, § 143-145B(1) (2020).

10

ownership of a lot by one or more person[s], partnership[s] or corporation[s], which ownership is separate and distinct from that of any adjoining lot." *Id.*, § 143-146.

> Further, the zoning ordinance provides:
>
> An applicant for a special exception shall have the burden of establishing by competent evidence and testimony both:
>
> (a) That the applicant's application falls within the provisions of the ordinance which accords to the applicant the right to seek a special exception; and
>
> (b) That the allowance of a special exception will not be contrary to the public interest.

*Id.,* § 143-168D. Therefore, ABH had the burden of establishing that the Property met the requirements for a special exception under the zoning ordinance. The key issue controlling its ability to do so is whether the Property was "of public record in single and separate ownership" when the zoning ordinance was enacted in 1955. *Id.*, § 143-145.

*Cottone v. Zoning Hearing Board*, 954 A.2d 1271 (Pa. Cmwlth. 2008) (*en banc*) is analogous and provides useful analysis on this issue. In *Cottone*, a property owner sought a special exception and a variance to build a house on a lot only 30% of the size required by the applicable zoning ordinance. The lot was shown on an approved subdivision plan and was separately deeded and taxed. *Id.* at 1273. The previous owner acquired the land in 1966, the subdivision plan was approved in 1975, and the zoning ordinance was amended to increase the minimum lot size in 1986, making the preexisting lots undersized as of that time. *Id.* at 1273-74. All 16 lots in the subdivision were owned by the same corporation from 1966, long before the ordinance's amendment, to 2003, long after the amendment. *Id.* at 1274. Then, the lots were separately sold at a tax sale, and Cottone bought one of the lots. *Id.*

11

Because the lots were not under separate ownership at the time of the zoning ordinance's amendment, the zoning hearing board refused to grant a special exception or a variance; the trial court affirmed, concluding the tax sale purchaser failed to meet her burden of proving the lots were separate and distinct while under common ownership. *Id.* This Court agreed. *Id.* at 1279.

> In *Cottone*, we summarized the applicable legal principles as follows:
>
> [I]f two adjoining, but separately-owned, lots are rendered undersized by a zoning ordinance enactment, the two properties will not be affected by the ordinance. Each lot will continue to be a lawful, non-conforming size for purposes of the zoning ordinance. If those two lots later come under common ownership, the burden is upon the municipality to prove that the new owner intended to use the two lots as one integrated parcel. On the other hand, *if the same two adjoining lots are under common ownership when a zoning ordinance is passed that renders each property undersized, then the two lots are presumed to have merged. The burden is on the landowner to rebut the presumption.*

*Id.* at 1277 (emphasis added). Further, where contiguous lots had a single owner at the time they were rendered nonconforming in size, evidence that the parcels were conveyed by separate deeds, taxed separately, and depicted on an approved subdivision plan will not suffice to meet the landowner's burden; "these abstract legal attributes do not carry the day." *Id.* at 1279 (citation omitted). Instead, to satisfy its burden of proof, the landowner must provide "evidence of some overt or physical manifestation of intent to keep the lots in question separate and distinct." *Id.* at 1276 (citations omitted). "A physical manifestation of the intention to keep adjoining lots separate and distinct consists of [for example] a line of trees, a fence or wall separating the lots." *Id.* (citation omitted). Thus, where contiguous lots are jointly owned at the time a zoning ordinance renders them undersized, and one or

more such lots are later separately conveyed, an owner seeking zoning relief must provide evidence demonstrating that the lots were "used, maintained or treated as separate and distinct properties" at the time the zoning ordinance was enacted. *In re Appeal of Moyer*, 978 A.2d 405, 412 (Pa. Cmwlth. 2009).

Here, ABH offered no evidence that the Property or any component movie lot was held of public record in single and separate ownership at the time of the enactment of the zoning ordinance in 1955. ABH's expert witness testified that the subdivision creating the movie lots was recorded in 1920. RR at 47a. Neither party appears to dispute that, at that time, the landowner recording the subdivision plan owned all of the lots created therein. Thus, neither the Property nor any of its component lots was held of record in single and separate ownership as of that time. The current legal owner of the Property acquired it in 1968 along with another, noncontiguous tract containing two movie lots not at issue here. RR at 17a-18a, 24a & 69a. However, the record is bare of evidence concerning the ownership of the Property, its component movie lots, or other contiguous lots at any time between 1920 and 1955. There is simply no record evidence indicating whether, at the time the zoning ordinance was enacted in 1955, the Property's component lots were owned by one, two, three, or four different owners. More importantly, the record does not indicate whether the Property was first owned separately from other contiguous tracts *before* or *after* the enactment of the zoning ordinance in 1955. In other words, there is no evidence in the record indicating whether the Property was part of a larger group of commonly owned lots in 1955. If it was, ABH is not entitled to a special exception to develop the Property.

As stated above, as the party seeking the special exception, ABH bore the burden of demonstrating compliance with the zoning ordinance's requirements.

13

LOWER PROVIDENCE TWP., PA. ZONING CODE, § 143-168D(a) (2006). Manifestly, the four contiguous lots comprising the Property were not of public record in single and separate ownership when they were first shown on the approved subdivision plan in 1920, nor have they been so since they were all conveyed to the present legal owner in 1968. However, their status in 1955 at the time of the zoning ordinance's enactment is unknown. The parties disagree whether the four component movie lots comprising the Property merged for zoning purposes by reason of the 1968 deed, but we need not decide that issue, because in either event, ABH has failed to sustain its burden of demonstrating the status of the Property *when the zoning ordinance was enacted in 1955*.[15]

Moreover, ABH has offered no evidence of any overt or physical manifestation of intent to keep the Property separate and distinct from any larger tract of which it may have formed a part in 1955, as required under *Cottone*, 954 A.2d at 1276. Although ABH avers that the Property's component movie lots were transferred as separate lots and remain separately depicted on the local tax map, our analysis in *Cottone*, as discussed above, established that such facts do not suffice to demonstrate that the Property was kept separate and distinct from contiguous, jointly owned properties in 1955. *See id.* at 1279. There was no testimony or other evidence of a physical feature such as a line of trees, a fence, or a wall separating the Property

---

[15] The Township avers that a predecessor-in-title to the current owner held title at some point to at least nine contiguous lots, including the four that now comprise the Property. The Township has filed with its brief, designated as a supplemental reproduced record, a certified copy of a deed it contends is supportive of this averment, arguing that we may take judicial notice of it under applicable rules of evidence. However, that deed was not part of the record before the Board or the trial court. Accordingly, we decline to consider the Township's purported evidence. *See Montgomery Cnty. Conservation Dist. v. Bydalek*, 261 A.3d 1073, 1079 n.8 (Pa. Cmwlth. 2021) (observing that an appellate court may not consider documents that are not part of the original record).

14

from other contiguous nonconforming lots, nor was there evidence of any other physical demarcation in 1955. Thus, ABH also failed to sustain its burden of demonstrating that the Property and any additional jointly held nonconforming lots were "used, maintained or treated as separate and distinct properties" at the time the zoning ordinance was enacted. *See Moyer*, 978 A.2d at 412.

For these reasons, we agree with the Board and the trial court that ABH failed to demonstrate that it met the zoning ordinance's requirement of single and separate ownership at the time the zoning ordinance was enacted in 1955, so as to qualify for a special exception.

## B. Dimensional Variances

We disagree with the Board that ABH's variance requests are moot because it does not qualify for a special exception. Ineligibility for a special exception does not automatically make one ineligible for a variance. *See, e.g.*, *W. Goshen Twp. v. Crater*, 538 A.2d 952, 955 (Pa. Cmwlth. 1988) (denying a special exception and separately analyzing a variance request). However, for the reasons discussed below, we agree with the Board that ABH failed to demonstrate the requisite hardship to support its requests for dimensional variances.

An applicant for a variance must establish all of the following criteria:

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) *the hardship is not self-inflicted*; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental

15

to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015) (quoting *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (citation omitted) (emphasis added) (additional quotation marks omitted)); *see also* Section 910.2(a)(1-5) of the MPC, 53 P.S. § 10910.2(a)(1)-(5); *Larsen v. Zoning Bd. of Adjustment*, 654 A.2d 256, 261 (Pa. Cmwlth. 1995) (stating that "[v]ariances are generally granted only under exceptional circumstances and an applicant must satisfy all criteria necessary for the grant of a variance") (additional citation omitted).

As a general rule, "[w]here a lot is too small to conform with the minimum lot area requirements, and cannot be made to conform by merging lots or by re-subdividing a larger tract, enforcement of the ordinance would sterilize the land, creating the necessary hardship which will justify the granting of a variance." *W. Goshen Twp.*, 538 A.2d at 955 (citing *Application of BCL, Inc.*, 387 A.2d 970, 972-73 (Pa. Cmwlth. 1978)). However, the subdivision of a single piece of property rendering part of it undersized is a self-inflicted hardship as to that undersized lot, and a variance will not be granted. *Parkside Assocs., Inc. v. Zoning Hearing Bd.*, 532 A.2d 47, 50 (Pa. Cmwlth. 1987); *see also Dudlik v. Upper Moreland Twp. Zoning Hearing Bd.*, 840 A.2d 1048, 1054 (Pa. Cmwlth. 2004) (explaining that once lots merged as a result of zoning, the sale of one lot, making the remaining lot nonconforming, resulted in a self-created hardship regarding inability to build on the undersized lot); *Price v. Bensalem Twp. Zoning Hearing Bd.*, 569 A.2d 1030, 1033 (Pa. Cmwlth. 1990) (same); *In re Appeal of Grace Bldg. Co.*, 392 A.2d 888, 890 (Pa. Cmwlth. 1978) (same).

16

Moreover, the owner of contiguous tracts, one of which is nonconforming, may not convey away the conforming portion, retain the nonconforming portion, and thereafter obtain a variance to allow construction on the nonconforming lot; it follows that such an owner likewise may not evade the requirements of a zoning ordinance simply by conveying away the nonconforming portion, and the owner's successor-in-interest may not acquire any entitlement to a variance superior to that of the seller.

In *Snyder v. Zoning Bd. of Adjustment*, 26 D. & C. 2d 593 (1961), the purchaser of a lot sought to continue the same use previously made by the seller, although that use was illegal under the applicable zoning ordinance. The Montgomery County Court of Common Pleas (the same trial court as in this case) opined:

> If the peculiar circumstances which render the property incapable of being used in accordance with the restrictions contained in the ordinance have been themselves caused or created by the property owner *or his predecessor*[-]*in*[-]*title*, the essential basis of a variance, *i.e.*, that the hardship be caused solely through the manner of operation of the ordinance upon the particular property, is lacking. In such case, a variance will not be granted; the hardship arising as a result of the act of the owner *or his predecessor* will be regarded as having been self-created, barring relief.

*Id.* at 596 (quoting Rathkopt, *Law of Zoning and Planning* 48-1 (3rd ed. 2005)) (emphasis added) (quotation marks omitted). We find persuasive the *Snyder* court's reasoning imputing to a variance applicant the self-created nature of a hardship imposed by a predecessor in title. "Otherwise, by illegal use and subsequent conveyance an owner might effectively nullify a zoning ordinance." *Snyder*, 26 D. & C. 2d at 596. Although *Snyder* concerned an illegal use rather than an illegal lot,

17

we think the same principle applies equally to the illegal creation of an undersized lot as to an illegal use.

Here, there is no allegation that either ABH or the Property's current legal owner conveyed away any contiguous lots, thereby rendering the Property nonconforming. However, as discussed in Section A above, the record is silent concerning the ownership of the Property and the surrounding lots between the recording of the approved subdivision creating the movie lots in 1920 and the enactment of the Township's zoning ordinance in 1955, or, indeed, at any point before 1968. Thus, it is impossible for this Court to determine at what point a conveyance occurred that first placed the Property in single and separate ownership and created a lot of nonconforming size. Without offering any evidence on that issue, ABH could not and did not meet its burden of demonstrating that a predecessor-in-title did not create the hardship from which ABH now seeks relief. Because we believe the self-created nature of such a hardship could not be cured merely by reconveying the Property, we agree with the Board that ABH has not shown the requisite hardship to obtain variance relief.

### C. Ostensibly Confiscatory Zoning

ABH argues that it must be allowed to make reasonable use of the Property by constructing a reasonably sized home on the lot. Otherwise, ABH posits, the zoning ordinance has the effect of confiscating the Property by depriving ABH of the ability to use it for a permitted purpose. As stated above, as a general rule, a property owner must be allowed to make reasonable use of his property. *W. Goshen Twp.*, 538 A.2d at 955. However, the mere existence of a nonconforming lot does not automatically entitle its owner to relief from applicable zoning

18

requirements. Specifically, a nonconformity created after a zoning ordinance has been enacted does not entitle the property owner to zoning relief. *See, e.g.*, *Parkside*, 532 A.2d at 50.

Here, the Township's zoning ordinance provides for a special exception to allow construction on an undersized lot, where the lot's size has been rendered nonconforming by the ordinance's enactment. LOWER PROVIDENCE TWP., PA. ZONING CODE, § 143-145 (2006). Requiring the property owner to demonstrate that the nonconforming status predated the ordinance's enactment is a reasonable precondition to obtaining a special exception *and one that ABH does not challenge*.

As this Court explained in *Cottone*, where contiguous properties with a single owner are rendered nonconforming in size by a later-enacted zoning ordinance, they are presumed to have merged for zoning purposes. 954 A.2d at 1277. Therefore, it also is reasonable to require the owner of a nonconforming lot to show that the lot had not merged with other contiguous lots under a common owner at the time the zoning ordinance was enacted.

As explained in Section A above, ABH simply failed to make that required showing here. Its failure to meet its burden of proof does not render the Township's zoning ordinance confiscatory.

### D. Future Zoning Issues Regarding Movie Lots

In considering whether to grant ABH's requests for a special exception and variances, the Board expressed concern that granting relief here might lead to a flood of other demands for zoning relief regarding the many undersized movie lots that remain as non-buildable lots in the Township. ABH insists that this was error and that the Board should have decided ABH's applications for relief solely on their

own merits. Although this argument has facial appeal, we need not reach it. The Board's decision was amply supported by the record and applicable law, even without its reliance on its expressed concerns about opening the floodgates of litigation over future requests for special exceptions and variances regarding other undersized lots. Therefore, any error in considering such concerns was harmless.

## IV. Conclusion

Based on the foregoing discussion, we affirm the trial court's order denying ABH's appeal from the Board's decision.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ABH Builders, Inc.,     :
     Appellant   :
           :
    v.       :
           :
Lower Providence Township :  No. 889 C.D. 2020
Zoning Hearing Board   :

O R D E R

AND NOW, this 22nd day of December, 2022, the order of the Court of Common Pleas of Montgomery County dated August 7, 2020 is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge